## Van Swearingen *against* Harris.

When there are mutual accounts between parties, the items of credit and charge in such accounts, within six years before the commencement of the action, are deemed equivalent to a subsequent promise reviving the debt.

In an action upon a book account of a decedent, it is only necessary to prove that they are books of original entry to admit them to go to the jury as evidence; and if evidence be afterwards given as to the time when the entries were made, this must be referred with the books to the jury.

ERROR to the Common Pleas of *Juniata* county.

·This was an action of debt upon a book account by Andrew Parker & John Milliken, administrators of Thomas Harris, deceased, against Evan Van Swearingen. The defendant pleaded *non assumpsit, non assumpsit infra sex annos,* and payment, &c.

The plaintiffs produced the books of their intestate and called

John Milliken sworn. I believe these are Thomas Harris's books of original entries—all in his own hand-writing—they are the only books that came into our hands as administrators.

Cross-examined. I saw these books in Harris's lifetime—they were frequently left with me—did not hear him say he had kept this account on his slate—he said he usually entered his accounts on a slate in the first place, and then drew them off into his book—sometimes for two or three days—never heard him say how he kept this account.

Andrew Parker sworn. These are the only books of original entries that came into our hands—*I can only recollect that he said he entered the account first on a slate*—can't say how long he kept it there—and then entered it on his book—this was in the case of *Harris* v. *Coon.*

Books of original entry offered.

Objected to by the defendant.

The defendant offered to prove by a different witness to the court, that Harris swore before the arbitrators in his case against Jacob Coon, that he entered his accounts on the slate—that they remained there sometimes two and three days, sometimes a week or ten days, and sometimes two weeks, before he entered them on his book—that frequently his hand shook so with hard work, that he could not write. This he said in relation to these books, but not in relation to this account.

Offer objected to by plaintiffs, and rejected by the court. Exception taken.

[Van Swearingen v. Harris.]

Books admitted by the court—exception taken by the defendant.

Plaintiffs only claim account from 1809, when it is marked settled by Thomas Harris, and balance due him of £4 17s. 4d., dated 2d of October 1809.

The first credit in Harris's book is June 1,

| | |
|---|---|
| 1816 and year '17, amounting to | $26.00 |
| 1823, '24, '27, credits to the amount of | 56.71 |
| 1827, again credits to the amount of | 11.68¾ |
| 1828, credit to the amount of | 37.25 |
| 1831, credit to the amount of | 100.00 |
| 1834, credit for | 30.00 |

Plaintiff reads from defendant's books, produced in evidence on notice, charges in November 1804, May 1810; also ledger of 1810, containing charges and credits from September 1810, till July 1811. Ditto book in 1823, 1824, 1826, 1827, and October 1832.

Summons issued 7th of April, 1838.

William Hart sworn. I was an arbitrator in this cause once—Harris's books were laid before us and examined—the parties were present—one of the counsel read one of the books, and the other the other—I heard no objection to the books—the credits were read in Harris's book, and also those in Swearingen's book—Swearingen was pretty mute—seven or eight moves, he said he never got so many at once—remember bill of paints being before us, produced by Swearingen, and claimed by him—he claimed sole leather, herring and mackerel, and his credits in the books laid before us.

Defendant's evidence:

John Wright sworn. At the arbitration of *Harris* v. *Coon*, Mr Parker objected to the books of Harris—he asked him if he had not been in the habit of keeping his account on the slate from one to two and three weeks—he said it might be—he generally filled his slate before he copied it off into his book.

Jacob Coon sworn. As near as I can recollect, when Parker asked Harris, how long he kept his entries on the slate before he entered them in his book—he said, to the best of my recollection, he said he kept them there sometimes two or three weeks—Parker asked him the reason—he said his hand shook with hard work, and if it did rub out, he could put it in again.

The items admitted before the arbitrators in evidence.

Joseph Boggs sworn. I was present when Van Swearingen paid Harris the $100—don't know precisely when, can't fix a date.

The court thus charged the jury:—

HEPBURN, President.—The claim of the plaintiffs, who are the administrators of Thomas Harris, deceased, is on a book account for blacksmith work done by their intestate, Harris, commencing

as early as 1805, and ending in 1834.  The account is a long one, and the principal difficulty of settling it, devolves of course on you. If the books are copies made from the slate of Harris, after an interval of a week or more from the time the work was done, and entered on the slate, as stated by some of the witnesses, they are not such books of original entry as the law contemplates, and you should reject them; on the contrary, if the entries were made on the slate first, and transferred to the books the same day, or within a day or two, as testified by John Milliken, they are sufficiently authenticated to go to you for what they are worth.  You must determine this, not we.  If you find they are not books of original entry, then we answer the defendant's first point, viz. (" If the jury believe the evidence given in the cause, the books of the plaintiff are not books of original entry, and ought not to be regarded by the jury as furnishing evidence whereon to found a verdict for the plaintiffs.") in the affirmative.  But, whether they are or not is now for you to determine, under a view of all the facts in the case.  Defendant's third, fourth and fifth points, read and answered in the affirmative.  Third point—(" the jury should give credit to the defendant for the sum of $30, paid by him to the plaintiff in 1834, and this sum of $30 should be deducted from the charges of the plaintiff since April 7th 1832.")  Fourth point—(" accounts between a blacksmith in the county and his agricultural employers in the course of his trade, are not such accounts between merchant and merchant, their factors or servants, as are excepted from the operation of the 2d section of the Act of Limitations, of the 27th of March 1713.")  Defendant's fifth point—(" All payments made by the defendant within six years before the commencement of this suit, should be deducted from the charges of the plaintiff within the said period of six years.")  Defendant's second point—("if the jury believe the evidence given, the statute of limitations is a bar to the recovery of the plaintiffs, as to all items charged before the 7th of April 1832.")  Answer.  If you find from an examination of the books of the parties, that their accounts were mutual, and the demands reciprocal between them, the statute would not be a bar to the plaintiff's recovery of the balance due him; but if the accounts and demands are not so, the statute would preclude his recovery beyond a period of six years from the commencement of this suit, and whether the testimony warrants the one conclusion or the other, you must determine, not we.  The accounts are long, and you will have to examine them.  Credits of payment on account only evidenced by the plaintiff's books would not be such mutual accounts as would prevent the operation of the statute.  This, we think, is settled by the Supreme Court, in 17 *Serg. & Rawle* 347.  I cannot, therefore, answer plaintiffs' third and fourth points in the affirmative.  Third point—("if six years did not elapse between any of the charges and credits, and the last item within six years previous to the bringing of this suit,

[Van Swearingen v. Harris.]

it is not within the statute, and the plaintiffs ought to recover the balance of the account.")  Fourth point—("if not mutual accounts, and the defendant made payments on account within every six years, they would take the case out of the statute.")  Plaintiffs' first point—("the plaintiffs' counsel request the court to instruct the jury, that if they believe the accounts between the parties are open, running and mutual accounts, they are not barred by the statute of limitations.")  Answered in the affirmative.  Plaintiffs' second point—("if the jury believe that the defendant admitted before the arbitrators, or at any time, that the plaintiff's account was correct, except six or seven removes which he objected to, it cannot be affected by being first entered on the slate, and not transferred for a number of days.")  I know of no evidence in the cause, showing the defendant's admission as here stated; the remaining part of the point is answered in the opening part of the charge.

If the books are rejected, the account since 7th of April 1832 is not disputed, and the plaintiff would be entitled to your verdict for such sum as you think due him, deducting his payments made since that date.

The whole of the facts you must determine, and not we, and find such verdict, under the law as we have stated it, as you think right.

Charge excepted to, by plaintiffs and defendant.

*Mathers* and *J. Fisher*, for plaintiff in error, on the subject of the effect of the statute of limitations, cited 17 *Serg. & Rawle* 347.

*Benedict* and *Parker, contra,* cited 6 *Term Rep.* 189; 4 *Bac. Ab.* 478; 16 *Serg. & Rawle* 133; 2 *Mass.* 221; 2 *Saund.* 127, *note.* 9 *Wend.* 126; 6 *Cow.* 193; 5 *Johns. Chan.* 531; 7 *Wend.* 322; 2 *Johns.* 200; 19 *Vez.* 180; 20 *Wend.* 72.

The opinion of the Court was delivered by

Rogers, J.—When there are mutual demands, if any item of such account be within six years before the commencement of the suit, such item is deemed equivalent to a subsequent promise reviving the debt.  This was first decided in *Catling* v. *Skoulding,* (6 *T. R.* 189) and has been repeatedly recognised since, as the cases cited abundantly show.  It takes the case out of the statute, and it is immaterial whether the parties are merchants or not, as it goes on the ground of implied promise.

The administrators, who were examined without objection, proved the books of original entries of the intestate, by evidencing that they were in his hand-writing, and that they were the only books that came to their hands, as administrators.  This was enough to lay the books before the jury.  The subsequent evidence showed that it was the general practice of the intestate to

make his entries on a slate, and afterwards draw them off in his book; and that this sometimes was not done until two or three days. If it had been proved that the same practice was pursued as regards this account, it would be doubtful whether the evidence could have been received. But under the circumstances disclosed, the court was right in receiving the evidence, and submitting the facts to the jury.

Judgment affirmed.