## Foster, Exr., Appellant, v. Wehr.

Argued April 17, 1934.

Before TREXLER, P. J., KELLER, STADTFELD, PARKER and JAMES, JJ.

*John M. Gallagher,* and with him *Joseph A. Tritschler,* for appellant.

*Clyde Holt* of *Holt, Holt & Richardson,* for appellee.

Opinion by Stadtfeld, J., July 13, 1934:

This is an appeal by plaintiff from the refusal of the lower court to take off a nonsuit in an action of assumpsit brought by Harry K. Foster, executor of the last will and testament of Mary Reed, deceased, against A. A. Wehr. The action was brought to recover the sum of $380.75 plus interest claimed to be due on a running account representing the sale of merchandise by plaintiff's decedent, Mary Reed, to the defendant.

Paragraphs two and three of the statement of claim are as follows: "2. The said Mary Reed during her lifetime conducted a store in said Economy Township, Beaver County, Pennsylvania, and on the verbal orders of defendant and at his special instance and request, sold and delivered to the defendant the goods at the times and in the amounts more fully set forth in the true and correct copy of Mary Reed's books of original entry, hereto attached, made a part hereof, marked Exhibit 'A'; the said goods aggregating in all the sum of $6,193.94, upon which payments have been made by the defendant in the sum of $5,813.19, as shown upon said Exhibit 'A'.

"3. Plaintiff avers that the prices charged for the said merchandise were the fair, reasonable and market prices of the same at the times they were sold and delivered to the said defendant, and, further, are what the said defendant agreed to pay therefor."

Attached to the statement is an exhibit comprising 157 typewritten pages. At the top of each page appears the name of A. A. Wehr, and said exhibit purports to show articles of merchandise from December 1, 1921 to May 14, 1931, inclusive. Opposite each item of merchandise are certain figures. The items of charge therein are all placed together by themselves, as of various dates, and likewise the credits are all placed one after the other, of various dates.

Answering paragraphs two and three of the statement of claim, the defendant, in the second and third paragraphs of his affidavit of defense sets up the following: "2. The allegations of the second paragraph of said statement of claim, that Mary Reed during her lifetime conducted a store in said Township of Economy, Beaver County, Pennsylvania, are admitted, but the allegations of said paragraph two that on the verbal orders of defendant and at his special instance and request, sold and delivered to the defendant the goods at the times and in the amounts more fully set forth in the true and correct copy of Mary Reed's books of original entry, hereto attached, made a part hereof, and marked Exhibit 'A', the said goods aggregating in all to the sum of $6,193.94 upon which payments have been made by the defendant in the sum of $5,813.19, as shown on said Exhibit 'A', are denied, and for further answer to said paragraph two of the said statement of claim, it is averred that the said Exhibit 'A', is not a true and correct copy of Mary Reed's books of original entry, and it is denied that the said defendant is indebted to the said Mary Reed's estate in the sum of $380.75 set forth in said Exhibit 'A'.

"3. The allegations of paragraph three of said statement of claim that plaintiff avers the prices charged for the said merchandise were fair, reasonable and market prices of the same at the times they were sold and delivered to the said defendant, and, further, are what the said defendant agreed to pay therefor, are denied, and it is averred that defendant never agreed to pay the prices for said goods and the amounts set forth in said Exhibit 'A', and that the defendant is not indebted to the plaintiff in the sum of $380.75."

The affidavit of defense further averred that on or about May 3, 1930, the defendant and said Mary Reed had a settlement of their accounts as of January 1, 1930, at which time it was agreed that the balance due the said Mary Reed as of January 1, 1930, was the sum of $236.66; that defendant purchased from the said Mary Reed certain goods, since January 1, 1930, as also made certain payments, leaving a balance due plaintiff of $64.61 with interest from January 1, 1930, for which amount defendant tendered judgment. Plaintiff thereupon entered judgment for the amount admitted with an election to proceed for the balance. Plaintiff, thereupon, moved for judgment for want of sufficient affidavit of defense for the amount of the claim, less the amount for which judgment had been entered. Before argument a supplemental affidavit of defense was filed averring, inter alia, certain additional payments in the amount of $175 as having been made and for which no credit had been given in the settlement referred to, and which if allowed would extinguish the indebtedness for which this suit was brought. The rule for judgment was, after argument, discharged in an opinion by READER, P. J.

The case thereupon went to trial before the court and a jury. At the trial plaintiff offered in evidence the averments of paragraphs second and third of the

statement of claim, as insufficiently denied in the affidavit of defense. Objections thereto were sustained by the court. These rulings are covered by the first and second assignments of error.

Plaintiff also offered to prove by Harry K. Foster, executor, after being called as a witness: that following the death of Margaret Emerich, books kept by Margaret Emerich for Mary Reed were turned over to this witness; that included in those books are accounts, "plaintiff's exhibit 1 to 8" inclusive; that in those books are entered the only items involved in this action against A. A. Wehr, commencing with December 1, 1921 and ending with July 9, 1931.

Prior to this offer, Pearl Barto had been called as a witness and testified that she had worked 'for decedent at various periods for a number of years prior to her death; that "the accounts, during each month, were put on the books, before sending groceries out. ...... The small books—well, she put the account in there for each customer and then put it in her large book. ...... Well, she had these orders sent in and she would fill those orders and copy those into her books." By the court: "Q. That is in the large book? A. Why, in both books, one small book and the large book. Q. Well, when would she copy them into the books? You say that she did that at the end of the month. Now, how was it kept in the meantime? Did she have little slips on which it was kept? A. She had her slips, her cards, and she would copy them into the books. ...... Q. Do I understand now that there were loose slips and that is what the entries were made from in both the large books and the small books? A. Yes, sir; she had the cards that she would write down what was sent out to each customer, the article that went out, and that was—and the price was on it, and that was sent to her customers." She also testi-

fied that the small books she referred to were the customers pass books.

The offer of the books was objected to for the reason that they were in ledger form and were not books of original entry. This objection was sustained by the court, and this ruling forms the basis of the third assignment of error.

At the conclusion of the testimony, the court granted a compulsory non-suit and subsequently overruled a motion to take it off. This is the basis of the fourth assignment of error.

As to the first and second assignments of error: Paragraphs two and three of the affidavit of defense are simply general denials of the matters set forth in the corresponding paragraphs of the statement of claim, and are not the specific answers required under the Practice Act, as has been frequently decided: Buehler v. U. S. Fashion Plate Co., 269 Pa. 428, 112 A. 632; Irwin v. Weikel, 282 Pa. 259, 127 A. 612; Eagle Package Co. v. Kincus, 89 Pa. Superior Ct. 400; Fulton Farmers Assn. v. Bomberger, 262 Pa. 43, 104 A. 805.

The averments of paragraphs two and three of the statements should have been admitted as not sufficiently denied. The burden would then devolve on defendant to establish the alleged additional credits to which he claimed to be entitled. This insufficiency was recognized by the lower court in its opinion overruling the motion for judgment on other grounds.

As to the third assignment of error, relating to the offer of the books which came into the hands of the executor, we think the court erred. The mere fact that the books were kept in ledger form is no valid objection: Hoover v. Gehr, 62 Pa. 136.

It appeared from the testimony of Pearl Barto, supra, in one part, that "the accounts, during each month, were put on the books, *before sending groceries*

out." (Italics supplied.) As the charges on the books appear at various dates during the month, if the charges were put on *during* the month, a fair implication would be that they were put in at the time of the various transactions and would be competent evidence. If, on the other hand, the entries were made at the end of each month, a different situation would present itself. It was for the jury to reconcile these conflicting statements of the witness. As said by Mr. Justice SHARSWOOD in Hoover v. Gehr, supra, p. 138: "The book of a decedent appearing on its face to contain charges of merchandise sold and delivered, is admissible in evidence on proof of his handwriting alone. It is not necessary to accompany it with any evidence as to the time and manner in which the entries were made. This would generally be impossible from the death of the only party having any knowledge of the matter. The presumption, prima facie, is, that the book of a decedent was regularly kept as a record of his daily transactions. If testimony is subsequently introduced which raises any question upon the subject, it is for the jury to determine, under proper instructions from the court: Van Swearingen v. Harris, 1 W. & S. 356; Odel v. Culbert, 9 Id. 66."

Quoting from the opinion of Mr. Justice BURNSIDE, in Odel v. Culbert, supra: "It has long been the universal practice to admit a deceased man's books in evidence, when the book would have been evidence with his oath if living, on proof of his handwriting. I can see no reasonable objection to this practice. Dead men's estates are sufficiently plundered even with this safeguard."

The assignments of error are sustained, judgment of non-suit is stricken off and a procedendo awarded.