# Buehler, Appellant, *v.* United States Fashion Plate Co.

*Practice, C. P.—Statement of claim—Affidavit of defense—Information and belief—Admissions—Evidence—Act of May 14, 1915, P. L. 483—Appeal—Presumption as to evidence.*

1. If there are averments in the statement of claim with regard to which defendant has no personal knowledge, it is his duty to institute such inquiries as reasonably can be made, and if from information thus obtained, and from personal knowledge of collateral matters which bear on the subject, he is satisfied that the facts averred are untrue, he may allege in his affidavit of defense that, on information and belief, the facts in question are not true, and he so expects to prove.

2. If defendant can get no information on the points involved, but believes from the knowledge he has of collateral cognate matters that the averments are not true, he may allege he has exhausted all sources of knowledge on the subject which were open to him,

to determine the truth of the averments, and, from the information received, or his inability to obtain any information on the subject, coupled with his general knowledge of the matter, he believes the allegations to be untrue, and avers his expectation so to prove.

3. If defendant contents himself with a simple disavowal of knowledge, and a formal call for proof, all matters thus dealt with in the affidavit of defense, which are duly averred in the statement, may be treated as conceded, when properly brought before the court, or as proved, when the pleadings are admitted in evidence.

4. If the plaintiff offer the affidavit of defense alone or particular parts thereof, without restricting his offer, the averments of fact so tendered, if accepted in evidence, must be given due credit.

5. While the pleadings in a case determine the issues, primarily they are not evidence for any purpose, unless made so by act of assembly.

6. A fact averred in the statement of claim, and not specifically denied in the affidavit of defense, is an admitted fact; but does not become such for purposes of trial unless put before the jury in one of the following ways:

. (a) By the presiding judge stating to the official stenographer, in the presence of counsel, that certain facts, which he details and directs to be placed on the notes of trial, are averred in the statement and not denied in the affidavit, and hence must be treated as admitted.

(b). By counsel directing to be placed on the notes certain detailed facts, which they admit.

(c) By offering in evidence specific parts of the statement of claim, with what counsel conceive to be the replies thereto contained in the affidavit of defense, and having the facts thus sought to be established placed on the notes as admitted, because averred in the statement and not denied in the affidavit of defense.

7. If the affidavit of defense only qualifiedly concedes a particular fact, and plaintiff offers it in evidence as if the fact were unqualifiedly admitted, it is the duty of defendant at that time to call attention to the qualification, by a proper objection; and, when this course is pursued, the court will not admit the evidence without the qualification; if it does, an exception may be entered in support of a future assignment of error.

8. When plaintiff's case is closed, and a motion for nonsuit is entered, such motion must be based on the record as made, and the court cannot go back to the pleadings for the purpose of modifying in any way facts which have been offered and admitted in evidence; but the court may reopen the case, to reverse prior rulings, etc.

9. On appeal, if any assignment of error raises a question as to whether a point at issue was in fact admitted, either absolutely or qualifiedly, this will be reviewed exactly like any other properly raised point concerning the admission of evidence; but if no such assignment appear, the appellate court must accept the record as made, with the facts as thus appearing in evidence, whether rightly or wrongly admitted.

10. On a review of a refusal to take off a nonsuit, where there is no assignment of error attacking the admission of evidence, offered to prove the existence of a writing, the appellate court must assume that all proof relating thereto, tendered and accepted, are properly in evidence.

*Corporations — Contract of employment — Agreement to repurchase stock—New corporation—Liability of new corporation on contract of older company—Notice.*

11. Where the superintendent of a corporation buys stock from it, under an agreement that, if he leaves his employment within ten years for any cause other than his own dissatisfaction, the stock shall be repurchased; and the company becomes insolvent, and a new company is organized by parties connected with financial institutions which had been creditors of the old company, and the new company acquires certain of the old company's tangible property, and continues the business with the same superintendent, the latter cannot, after his discharge, enforce against the new company the agreement to repurchase his stock, where there is nothing to show that the organizers of the new company knew of the terms of the contract or authorized any one to assume it for them the contract, or that the new company had knowledge of the same or ever assumed any liability under it.

Argued January 10, 1921. Appeal, No. 81, Jan. T., 1921, by plaintiff, from order of C. P. No. 4, Phila. Co., Sept. T., 1919, No. 416, refusing to take off nonsuit, in case of Robert L. Buehler v. United States Fashion Plate Co. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ. Affirmed.

Assumpsit on employment contract. Before Audenried, P. J.

The opinion of the Supreme Court states the facts.

The court entered a compulsory nonsuit which it subsequently refused to take off. Plaintiff appealed.

*Error assigned,* among others, was refusal to take off nonsuit, quoting order.

*H. C. Ladner,* of *Ladner & Ladner,* for appellant.— The Sample Book Co. being insolvent and having by its own act made an assignment for the benefit of creditors and having transferred its control, government, management and right of liquidation upon a creditors' committee, the learned court below should have held as a matter of law that the creditors' committee had authority to make sale of the entire assets and business of the corporation: Dana v. Bank, 5 W. & S. 223; Ashhurst's App., 60 Pa. 290.

In any case, however, such a sale can only be objected to by a nonconsenting stockholder: Manhattan Hardware Co. v. Phalen, 128 Pa. 110; Moller v. Fibre Co., 187 Pa. 553; Mechanics B. & S. Assn., 202 Pa. 589; Gordon v. Preston, 1 Watts 385; Montgomery Web Co. v. Dienelt, 133 Pa. 585.

When a corporation with knowledge accepts and retains the benefits of its promoters' bargain, it is nevertheless bound: Girard v. Case Bros., 225 Pa. 327; Beltz v. Garrison, 254 Pa. 145.

*Edward Hopkinson, Jr.,* with him *Thomas Reath, Jr.,* for appellee, cited: Columbia Bank's Est., 147 Pa. 422; Illoway v. Daly, 65 Pa. Superior Ct. 333.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, February 21, 1921:

Robert L. Buehler sued the United States Fashion Plate Company to recover on a contract which he had with another corporation, named the United States Fashion and Sample Book Company; a nonsuit was entered, and plaintiff has appealed.

The theory of plaintiff's case, which he endeavored to sustain by proofs, was that the contract in suit, while not made with defendant, had been assumed by that cor-

poration; and, to show this, he relied largely on admissions in the pleadings. To prove these admissions at the trial, he tendered as evidence certain averments of his statement of claim, in connection with the answers thereto, or portions of such answers, contained in the affidavit of defense; although, in some instances, plaintiff offered simply detached portions of the affidavit, alleged by him to contain material admissions against defendant, and, on one occasion, instead of tendering, in the words of the declaration, an averment of fact therefrom, which he desired to establish as admitted, he merely stated his version of what appeared in the pleadings, offering therewith a portion of the affidavit of defense, containing what he took for defendant's admission.

The Practice Act of 1915 (P. L. 483), provides that, ordinarily, plaintiff's statement of claim and defendant's affidavit of defense shall constitute the pleadings in the case; and, by sections 6 and 8, "Every allegation of fact in plaintiff's statement......, if not denied specifically or by necessary implication in the affidavit of defense......shall be taken to be admitted......It shall not be sufficient for a defendant......to deny generally the allegations of the statement of claim......; but, ......[he] shall answer specifically each allegation of fact of which he does not admit the truth."

In view of the manner in which plaintiff undertook to prove his case, it is necessary, before entering on an examination of how far he succeeded in that direction, to state certain guiding rules of practice; and this we shall now do.

When a defendant comes to file his affidavit of defense, if there are averments in the statement of claim with regard to which he has no personal knowledge, it is his duty to institute such inquiries as reasonably can be made, using all sources from whence he can possibly get information concerning the facts averred by plaintiff. If, from the information thus obtained, and from personal knowledge of collateral matters which bear on the sub-

ject under consideration, the defendant is satisfied the facts averred in the statement are untrue, he is justified in alleging in his affidavit of defense that, on information and belief, the facts in question are not true, and he so expects to prove. If, however, the defendant can obtain no information on the points involved, but believes, from the knowledge he has of collateral cognate matters, that the averments of the statement are not true, he may allege that he has exhausted all sources of knowledge which are open to him, for the purpose of determining the truthfulness of such averments, and that, from the information received, or his inability to obtain any information on the subject, coupled with his general knowledge of the matter, he believes the allegations to be untrue, and avers his expectation so to prove.

Should the defendant, instead of pursuing any of the courses outlined, content himself with a simple disavowal of knowledge, and a formal call for proof (which defendant here did in several instances), all matters thus dealt with in the affidavit of defense, and are duly averred in the statement of claim, may be treated as conceded, when properly brought before the court, or proved, when the pleadings are admitted in evidence: Mellon Nat. Bank v. Peoples Bank, 226 Pa. 261. Should plaintiff offer the affidavit of defense alone, or particular parts thereof, without restricting his offer, the averments of fact so tendered, if accepted in evidence, "must be given due credit": Kull v. Mastbaum & Fleisher, 269 Pa. 202, and authorities there cited.

While the pleadings in a case determine the issues, primarily they are not evidence for any purpose, unless made so by act of assembly. A fact averred in the statement of claim, and not specifically denied in the affidavit of defense, is an admitted fact, but does not become such for purposes of trial, unless put before the jury in one of three ways: (1) by the presiding judge stating to the official stenographer, in the presence of counsel, that certain facts, which he details and directs to be

placed on the notes of trial, are averred in the statement and not denied in the affidavit, and hence must be treated as admitted; or (2) by counsel directing to be placed on such notes certain detailed facts, which they admit; or (3) by offering in evidence specific parts of the statement of claim, with what counsel conceive to be the replies thereto contained in the affidavit of defense, and having the facts thus sought to be established placed on the notes of trial as admitted, because averred in the statement and not denied in the affidavit of defense.

If the affidavit of defense only qualifiedly concedes a particular fact, and plaintiff offers it in evidence as though the fact were unqualifiedly admitted, it is the duty of defendant at that time to call attention to the qualification, by a proper objection; when this course is pursued, the court should not admit the evidence without the qualification; if it does, an exception may be entered in support of a future assignment of error.

When plaintiff's case is closed, and a motion for non-suit is entered, such motion must be based on the record as made; and the court cannot go back to the pleadings for the purpose of modifying in any way facts which have been offered and admitted in evidence—although, at this time, the trial judge of course has the right to reverse any prior ruling on the admission of evidence, even allowing an objection to be then interposed, if not theretofore made; but, in such event, the court must reopen the case, so that the party against whom the changed ruling is entered may have the same opportunity to prove the fact in controversy which he would have had if the new ruling had been made when the evidence was originally offered.

On appeal, if any assignment of error raises a question like whether a point at issue was in fact admitted, either absolutely or qualifiedly, this will be reviewed exactly like any other properly raised point concerning the admission of evidence; but, if (as in the present case) no such assignment appear,—the only material

ones present going to the refusal to set aside the non-suit,—we must accept the record made, with the facts appearing in evidence, whether rightly or wrongly admitted.

On a review of the refusal of a motion to take off a non-suit, where there is no assignment of error attacking the admission of evidence, offered to prove the existence of a writing, we must assume that all proofs relating thereto, tendered and accepted, are properly in evidence; and, under this rule, since the contract here in controversy—between plaintiff and the Sample Book Company—was offered in evidence, by tendering certain relevant averments of the declaration, a copy of the writing itself attached thereto, with admissions concerning it contained in the affidavit of defense, appellant not having assigned for error the acceptance of these proofs, there is, on the record, no room to contend, as defendant attempts to do, that the existence of the contract in question was not properly established. This, however, was only one step toward getting plaintiff's case to the jury; it is necessary to examine further to see how far he succeeded or failed in other essential steps to that goal.

Time forbids us going into a minute examination of the proofs, and it would serve no useful purpose so to do; but, applying the general rules of practice already indicated, the following facts may be taken as established:

Buehler was engaged, by the United States Fashion and Sample Book Company, as superintendent, under a written contract, dated February 22, 1916, at a fixed and progressive salary, for a period of ten years; at this time, he purchased 100 shares of stock of that company, paying therefor $10,000; plaintiff's contract provided that, if his services terminated at any time within the ten years, for any other cause than his own dissatisfaction, the corporation would buy back the stock at its cost to him. Within two years after the signing of this

contract the company became financially embarrassed, and entered into an agreement with a committee of its creditors, whereby seventy-two per cent of its outstanding stock was transferred to this committee. The agreement provided, inter alia, that: "Said new stockholders shall have full power to sell and dispose of said stock for the benefit of the creditors......, to vote and otherwise deal with the same......and to cause the company to take such action, either in continuance of [its] business......or in......liquidation, as the committee may think best."

There was nothing in the creditors' agreement which particularly concerned the contract with Buehler; and no evidence was produced to show that, when such agreement was made, the creditors' committee had knowledge of this contract.

A meeting of the company's creditors was held, April 9, 1919, to take action on a proposition contained in a letter which the committee had received from Ladner & Ladner, a Philadelphia law firm; this letter, dated April 5, 1919, made an offer of $50,000 for "all the right, title and interest which......the committee......had in the......Company" and its property, "including," inter alia, "all contracts," together with the capital stock then held by the committee, the latter to pay all liabilities theretofore contracted or incurred. The bid was raised to $60,000 by one Frank C. Somers, who was present, representing certain of the company's creditors; and this latter offer was accepted. The business continued as usual, with plaintiff acting as superintendent, at the salary fixed in his contract. A new corporation was formed called the United States Fashion Plate Company (defendant in this suit), by a number of individuals, who were connected with certain financial institutions which had been creditors of the Sample Book Company, and for whom, as well as others, Somers acted at the meeting in April, 1919.

This new corporation submitted a "written bid" (was not produced in evidence), to the old concern for certain of that company's tangible property which was accepted by a stockholders' vote. A bill of sale (also not produced in evidence) was delivered, whereby the new corporation acquired from the old one, which was then still in existence, the property in question; the new company continued to carry on the business, without interruption, Buehler remaining in his position of superintendent until July, 1919, when he was discharged.

Upon the happening of the last mentioned event, plaintiff tendered his stock to the old corporation for repurchase, in accordance with the terms of his contract with it; when that company neglected to act, a like tender was made to the new one, which refused to buy; whereupon this suit was commenced.

So far as the evidence shows, plaintiff's contract with the old company was in no manner mentioned when the new company took over the property of the former; but there is evidence on the record that, at the creditors' meeting in April, 1919, someone, acting for the committee, gave some sort of notice to bidders that there were "certain contracts which went with the sale of the business," and that "Mr. Buehler's contract was one of those mentioned." There are also assertions in the testimony, by plaintiff and one of his witnesses, to the effect that "the nature of those contracts was briefly recited"; but there is not a word of testimony detailing what was said in this alleged brief recitation, and it appears that plaintiff's contract was at no time produced. Finally, there is no evidence to warrant a finding that either Somers or any of the persons associated with him were notified that plaintiff's contract contained the provision, as to the repurchase of stock, sought to be enforced in this case; and, while the proofs depended on by plaintiff, hereinbefore referred to, mention "the above named promoters of the defendant company," there is

no evidence upon the record to show in any adequate way precisely who those so-called promoters were, their exact relation to the corporation in question, or that they, or any one for whom they acted, or who acted with them, ever gave Somers authority to assume for them or defendant company the contract now in suit,—in fact the proofs depended on by plaintiff indicate (if anything) rather to the contrary. Furthermore, the record is bare of particulars—such as are essential to charge the United States Fashion Plate Company, on the theory of promoters' obligations undertaken on its behalf—to show when or how that corporation was either promoted or formed.

Plaintiff, evidently recognizing the weakness of his case from the standpoints we have been discussing, insists that defendant, having acquired the property of the old corporation, is for that reason obliged in law to fulfill its contract with him. By a stretch of the imagination, one might possibly get enough out of the averments in the statement of claim to support this theory; but we think the learned president judge of the court below correctly disposed of it in the following excerpt from his opinion refusing to remove the nonsuit: "If Somers received property, upon the trust that it should be applied to the carrying out of Buehler's contract, and if the defendant acquired that property from him as a volunteer, or with notice of the trust, it would be bound to apply the property as stipulated; such, however, is not the theory on which the statement of claim is framed, nor was there any evidence produced that supported it. Moreover, it must be noted that what Somers bought at the creditors' meeting was not what passed to defendant under the bill of sale, to which reference has been made. [By the bill of sale] defendant acquired a portion of the effects of the......Sample Book Company, [while] Somers purchased from the.......committee only its right, title and interest in that corporation and its property"; and the opinion from which we quote well adds

that the creditors' committee in no aspect could be considered the direct owner of the corporation's property.

While plaintiff proved his contract and, perhaps, a breach thereof, he failed, for the reasons already stated, with others which might be noted, to establish facts that fix the present defendant with liability.

We have examined the authorities cited; but, since all are readily distinguishable from the case at bar, they require no discussion.

There is only one assignment of error calling for consideration, and that is the second, which complains of the refusal to remove the nonsuit; it is overruled and the others are dismissed.

The judgment is affirmed.