## Serventi *v.* Galli, Appellant, et al.

Argued March 24, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*J. Roland Johnston,* with him *Charles J. Jacques,* for appellant.

*Abraham Fishkin,* with him *Frank Reich,* for appellee.

OPINION BY MR. JUSTICE LINN, April 19, 1943:

Plaintiff filed his bill against his sister and her husband for a decree directing her as trustee to account to him for the proceeds of a bank account standing in the names of the plaintiff, Peter Serventi or Talina Galli (defendant) in the First National Bank of New Kensington, and for a decree enjoining defendants from conveying certain real estate alleged to have been purchased with money belonging to him and directing a conveyance to him. An answer on the merits was filed in which, among other things, the defendant, Talina Galli, denied that in December, 1935, when plaintiff's father died (to which reference will be made in this opinion) she changed a bank account left by his father into a joint account of herself and plaintiff. She alleged that certain sums were received by her from the plaintiff between 1936 and 1940; that she had agreed, for stated compensation, to furnish plaintiff with board, lodging and other services. Defendants also averred that the parties had agreed that money delivered to her by the plaintiff and not earned by her under the contract to furnish board, lodging, etc., should be deposited by her in a bank to the credit of either; that it was so deposited, and on January 23, 1941, the balance of $597.16 was withdrawn by the plaintiff. The case was tried on the merits. A decree nisi was entered (1) declaring Talina Galli trustee for the plaintiff in the sum of $2,991.49 with interest from January 1, 1941; (2) dismissing the bill against James Galli, her husband, and (3) refusing to enjoin defendants from conveying the real estate referred to. The defendant, Talina Galli, filed a number of exceptions which were heard by the court in banc, after which the decree nisi was made final. Only the defendant, Talina Galli, has appealed.

The appellant presents two points: (1) that the evidence does not support the decree requiring defendant

to pay to plaintiff the amount specified; (2) that before going to final hearing, the court should have decided preliminarily that defendant must account.

The evidence of intention to create the trust and its terms must be clear, definite and explicit: *Smith's Estate*, 144 Pa. 426, 428, 22 A. 916; *Brubaker v. Lauver*, 322 Pa. 461, 463, 185 A. 848. The plaintiff, who at the time of the trial was 41 years old and unmarried, showed that he lived in his father's home until the father's death in 1935, and delivered to his parents, during their lifetime, all his earnings. They were deposited in the father's account in the First National Bank of New Kensington. Account No. 32209 was in the names of "Zefferino or Peter Serventi." Account No. 23339 was in the names of "Talina Galli or Zefferino Serventi." Appellant testified that none of this money belonged to her; that she appeared as a joint depositor for her father's convenience. In January, 1936, after the father's death, appellant and plaintiff went to the bank and consolidated the two accounts into one in the names of Peter Serventi or Talina Galli, the balance then being $2,087.54. Between October 2, 1937, and October 13, 1938, appellant withdrew the entire amount with interest.

In 1935, shortly before the father went to the hospital for a serious operation, he called a family conference of his children at which four of them were present. The plaintiff testified that the father then said that the money in the New Kensington Bank "belongs" to the plaintiff and that his sister, the defendant, told her father ". . . to put this money in Pete's name." Plaintiff testified that after their father's death, defendant "Changed that money in my name that my dad left me" to a joint account in the names of Peter Serventi or Talina Galli, and that thereafter "Every pay I was working, I gave it all to her to keep and save for me." He also "told her to pay my board and keep the rest"; that is, "Put away for me to keep." He also testified that when he asked her for the bank book ". . . she got mad and she said,

'You had better find yourself another boarding place.' "
She then declined to give him the bank book, saying she
didn't have it. She did, however, give him "the East
Brady book" being the bank book referred to in the 8th
paragraph of the answer concerning which appellant
averred "that said account was closed on January 23,
1941, by the withdrawal of $597.16 by complainant."
The court found that from 1936 to January 1, 1941,
plaintiff turned over to appellant $3,959.21. Plaintiff's
brother, Joseph, testified that the father said "that money
in the New Kensington bank belongs to Pete. He said
all the money that Pete made, he always turned it over
to him, and he said he is entitled to all that money." He
added that defendant was present and agreed with him.
He testified that he knew of his own knowledge that
plaintiff "turned this money over to her," meaning the
appellant. Asked "What language did your father use in
reference to the money in the New Kensington Bank?
A. He said, 'That money that is in the New Kensington
Bank belongs to Pete, every nickel' . . .".

Joseph Serventi's wife was present at the same con-
ference and was asked what her father-in-law said re-
garding the bank accounts and replied, "he said that
money should be turned over, should all be turned over
to Pete" referring to the money in the bank at New Ken-
sington. Asked for his exact language she said, "Well,
he said that money should be turned over, should all be
turned over to Pete, that he was the only one left and he
wants all the money turned over to Pete so he will have
something to fall back on if anything should happen to
him." She testified that the defendant-appellant was
present and when asked, "Did she say anything?" re-
plied, "She agreed to it too. She said it should all be
turned over to him." "She also agreed to turn it over to
Pete too." Another brother, Michael Serventi, testified
that he did not recall exactly what was said but he ". . .
heard them talking about that money, that it was sup-
posed to be turned over to Pete."

The appellant testified in defense that the account in the New Kensington Bank was, during the father's lifetime, in the names of Talina Galli or Zefferino Serventi; that this was for his convenience; that "He always sent me over to take the money over. I never drawed out." She denied that the father made the statements to which the other witnesses testified. She said her father "told me to go ahead and use that money for his doctor bills, and what was left, it was up—it was mine." Her father desired her to ". . . take care of Pete." She said she made an arrangement with Pete that ". . . he give me this pay and I had to take out the board money and all the clothes and all the expenses, and what was left was put in the bank." She testified that the portion of his wages not needed for his maintenance, etc. was deposited by her to his credit in the East Brady bank, being the account referred to in the 8th paragraph of the answer referred to above. Asked whether, after her father's death, she had the New Kensington bank account changed to the joint names of herself and the plaintiff, she said: "The reason I put Pete's name on, if anything would happen in my death, it would be his, I would sooner have him to have that money than my own family, in case of my death." It is unnecessary further to detail the evidence.

The learned chancellor saw the witnesses and heard them testify. He was impressed by the veracity of the testimony offered on behalf of plaintiff; referring to part of appellant's testimony quoted above, he said it was ". . . so unnatural that we deem it unworthy of belief. Consequently, we have accepted as a fact the only other conclusion that can be arrived at,—that the money belonged to Peter and that she was acting both as his trustee and his agent in handling the account." He received the evidence of the services rendered by Talina for the plaintiff; said that he had ". . . not been satisfied with her testimony in explanation of the withdrawals from the First National Bank, particularly the

withdrawals of October 13, 1938, of $1,462.28, which closed the account." [1] He concluded that plaintiff had failed to establish that any of his money was used in the purchase of the Galli property and for that reason dismissed the bill as against James Galli and refused to enjoin the transfer of the property as prayed for in the bill.

The findings of fact were the subject of discussion before the court in banc; their adoption by the court gives them the effect of a verdict of the jury. We have considered the record in the light of the argument made by the learned counsel for the appellant but must conclude that the findings support the decree, which shall therefore be affirmed.

The second point was not presented at the trial or by the exceptions, but there is nothing to support it. The parties went to trial on issues made by the bill and answer. The bill contained averments of the obligations imposed and assumed by the appellant, with specified amounts, and the answer contained defendant's contentions with respect to the transactions in question and in amounts specified by her. There was no denial of the right to an account: see Act of June 24, 1895, P. L. 243, as amended by the Act of March 30, 1921, P. L. 60, 12 PS section 1104.[2] If a defendant chooses to account (as

---

[1] The testimony referred to, reads: "Q. And what was the withdrawal of October 13, 1938, of $1,462.28? What was that withdrawal for? A. I don't know. When I drawed it, I needed it. Q. You don't know what you did with that $1400? A. I needed it and I just took it."

[2] The Act, as amended, reads in part:—"In all cases wherein any court of common pleas of this Commonwealth, in the exercise of its powers as a court of chancery in matters of account, wherein the complainant prays for an account from the defendant or defendants, or from some of them, and on the part of the defendant *there is a denial of liability to account*, if upon this preliminary question of liability the decision or decree of the court is in favor of plaintiff and requires an account, then an appeal . . ." may be taken. (Italics supplied.)

he should wherever the right to an account is conceded) without first requiring a decree to do so, he will not be heard, after a trial on the merits, to say that he should first have been ordered to account: cf. *McCollum v. Braddock Trust Co.*, 330 Pa. 293, 198 A. 803. Defendant's answer may be regarded as an account rendered pursuant to the prayer of the bill.

Decree affirmed, costs to be divided between the parties as directed by the court below.