Drob et al., Admrs., Appellants, *v.* Jaffe (et al., Appellants).

298

Argued Dec. 6, 1944. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Hughes, JJ.

reargument re-fused March 19, 1945.

*Harry Fischer*, with him *Illoway & Fischer*, for defendants Marlowe.

*Thomas D. McBride*, with him *Nathan I. Miller* and *James L. Stern*, for plaintiffs.

*Joseph Gross*, for defendant Jaffe.

Opinion by Mr. Justice Horace Stern, January 18, 1945:

Plaintiffs' decedent, Morris Drob, purchased some bonds which had been executed by Robert and Celia Marlowe to Land Title Bank and Trust Company as obligee, also a judgment of that Company against the Marlowes and several judgments against them of Utility Building and Loan Association. The question involved in the present equity proceedings was whether Drob made these purchases in order to use the claims as the basis of a contemplated attachment against Marlowe's stock in a corporation in which he and Drob each had a half interest, or whether he purchased these securities for Marlowe's benefit with the understanding that, upon reimbursement of the purchase price, he would assign them to Marlowe.

Drob bought the bonds and judgments for $900, although they were of a face value of several thousands of dollars. He took title to them in the name of Sydney E. Jaffe, Esq. Drob having died, the administrators of his estate brought a bill in equity praying that Jaffe be ordered to assign to them these bonds and judgments. They produced evidence to show that the relations between Drob and Marlowe were hostile and that Drob bought these securities for the purpose of using them as a weapon against Marlowe, while the testimony on the part of defendants was to the effect that Drob and Marlowe were friends and, when Marlowe became financially embarrassed, Drob purchased the claims in order to give him an opportunity, at some later time, to acquire them at the price which Drob paid for them. The Chancellor chose to believe Drob's witnesses and to disbelieve Marlowe's, and accordingly entered a decree in favor of plaintiffs. His conclusions, supported as they were by evidence and affirmed by the court en banc, have the effect of the verdict of a jury: *Serventi v. Galli,* 347 Pa. 47, 31 A. 2d 715.

Marlowe objected to the testimony of David S. Malis, Esq., Drob's lawyer, who recounted conversations he had had with his client. The Chancellor eliminated these conversations except as they dealt with Drob's instructions to Malis in regard to the purchase of the securities (cf. *Eaton v. New York Life Insurance Co.,* 315 Pa. 68, 78, 79, 172 A. 121, 125, 126; *Wenz's Estate,* 345 Pa. 393, 397, 29 A. 2d 13, 15; *Martin's Estate,* 135 Pa. Superior Ct. 136, 149, 150, 4 A. 2d 551, 558) and also insofar as they showed Drob's state of mind and attitude toward Marlowe (see *Ryman's Case,* 139 Pa. Superior Ct. 212, 221, 222, 11 A. 2d 677, 681, 682; Wigmore on Evidence, (3rd ed.) Vol. 6, sec. 1790). This testimony was not accepted as evidence of the truth of the assertions made by Drob, but as "verbal acts" and as utterances indicating Drob's animus; therefore it did not fall under the ban of the hearsay rule.

Marlowe was a real estate operator and Drob a certified public accountant employed by Marlowe from time to time. Marlowe therefore insists that there was a confidential relationship between them which precluded Drob from purchasing these claims in an adverse capacity and for a hostile purpose. It is true that a confidential relationship is not limited to any particular association of parties but exists wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest: Restatement, Trusts, sec. 44, comment (c); *Metzger v. Metzger*, 338 Pa. 564, 570, 14 A. 2d 285, 288. But while some relationships are declared to be confidential as a matter of law, in others, as here, it is a question of fact to be established by the evidence: *Null's Estate*, 302 Pa. 64, 68, 153 A. 137, 139; *McCown v. Fraser*, 327 Pa. 561, 564, 565, 192 A. 674, 676; *Ringer v. Finfrock*, 340 Pa. 458, 461, 462, 17 A. 2d 348, 350. The Chancellor found that a confidential relationship in this case did not exist, that the parties dealt with one another at arm's length and that Drob did not gain information in regard to the bonds and judgments in his capacity as accountant for Marlowe but from other sources,—in short that, whatever else might be said as to his conduct, Drob did not abuse any confidence which Marlowe had placed in him by virtue of his professional employment.

As far as Jaffe is concerned, plaintiffs introduced in evidence the allegation of their bill that the bonds and judgments had been placed in his name as a straw party for Drob. In his answer Jaffe denied this allegation "as stated", and averred that Drob was indebted to him in the sum of $500 for legal services which he had rendered to Drob in this and other matters, and that the assignments of the bonds and judgments were taken in his name as security for this indebtedness. The Chancellor accepted the allegation of the bill in evidence without requiring that these qualifying averments also be admitted; this the court en banc properly deemed to be

error: see *Buehler v. United States Fashion Plate Co.,* 269 Pa. 428, 434, 112 A. 632, 634; *Swieczkowski v. Sypniewski,* 294 Pa. 323, 327, 144 A. 141, 143; *Rodgers v. Fleming,* 325 Pa. 228, 231, 188 A. 861, 863; *Weaver v. Welsh,* 325 Pa. 571, 574, 575, 191 A. 3, 6. However, even if plaintiffs had not been permitted to place on the record any portion of their pleading, the oral evidence which they presented fully established their case, so that this question became academic. Moreover, Jaffe testified and gave all the facts in regard to his alleged lien. The Chancellor, in his adjudication, apparently did not believe Jaffe and found against his claim, but subsequently said, in writing the opinion for the court en banc: "As to Jaffe's claim, the Chancellor concurs in the view that the factual situation was not decided correctly, assuming that Jaffe was a competent witness." That Jaffe *was* a competent witness follows from the decision of this court in *Weaver v. Welsh,* 325 Pa. 571, 578, 579, 191 A. 3, 7. Of course, if Jaffe were attempting as a plaintiff to establish his claim against decedent's estate he would not be a competent witness on his own behalf. But it could not have been within the intendment of the Act of May 23, 1887, P. L. 158, section 5 (e), that, where the representatives of an estate seek to recover property owned by the decedent, and the defendant, although having possession of the property, is bound to admit such ownership, he should not be allowed to testify to the fact that the property was transferred to him as security for a debt and was therefore subject to a lien in his favor. So to hold would permit the recovery of property pledged by the decedent without paying the obligation for which the pledge had been made,—this being accomplished by demanding the return of the property from the surviving party to the transaction and at the same time preventing him from explaining the terms under which he had acquired it. The injustice that would result from such a ruling is apparent.

Decree affirmed; costs to be paid by the appellants in each appeal.