J-A28039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ROBERT E. SWEIGART AS SHAREHOLDER OF WILLIAM SWEIGART & SONS SANITATION SERVICE INC., ROBERT E. SWEIGART AND SUSAN DESIMONE, COEXECUTORS OF THE ESTATE OF WILLIAM SWEIGART, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| VIOLET F. SWEIGART, A/K/A VIOLET RUTH SWEIGART, A/K/A VIOLET SWEIGART, WILLIAM K. SWEIGART, WILLIAM SWEIGART & SONS SANITATION SERVICE, INC., AND BILL SWEIGART WASTE WATER INC., | |
| Appellees | No. 2371 EDA 2014 |

Appeal from the Judgment Entered March 24, 2014
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 07-981

BEFORE:  GANTMAN, P.J., PANELLA, and SHOGAN, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED DECEMBER 02, 2015**

This is an appeal from a judgment in favor of Appellants entered on March 24, 2014.  We affirm.[1]

_____

[1]   This case originally came before a different panel of this Court that remanded to the trial court for preparation of a supplemental opinion addressing "the remaining three issues Appellants have raised in their brief on appeal."  ***Sweigart v. Sweigart***, 2371 EDA 2014 (unpublished memorandum) ("***Sweigart I***"), 5/14/15, at 7.  The original trial court opinion had found all issues waived due to the eleven-page "rambling
*(Footnote Continued Next Page)*

This equity action sought imposition of a constructive trust for breach of a confidential relationship. The following facts underlie the action:

William Sweigart ("Decedent") began a septic system pumping service in 1950. N.T., 3/3/11, at 63. Decedent had five children: Defendant-Appellee William K. Sweigart ("Bill"), Plaintiff-Appellant Robert E. Sweigart ("Bob"), Plaintiff-Appellant Susan Sweigart DeSimone ("Susan"), and two other daughters, Linda Moran and Dayle Francesco.[2] N.T., 3/2/11, at 7–8, 20, 35; N.T., 3/3/11, at 62–63. Appellants Bob and Susan, brother and sister, are co-executors of Decedent's estate. N.T., 3/3/11, at 63. Decedent's first wife, the mother of the five children, died in 1975. *Id*. at 65. Decedent remarried a third time on July 26, 1979, to Defendant-Appellee Violet Sweigart ("Violet"). *Id*. at 42, 72. Decedent added Violet's name to the deed of his home in Delaware County ("family home") and to a residence Decedent purchased in Sandpoint, Idaho.[3] *Id*. at 11.

_____

*(Footnote Continued)*

repetitive and overly lengthy" Pa.R.A.P. 1925 opinion. Trial Court Amended Opinion, 1/20/15, at 2. The trial court filed a Supplemental Opinion on July 16, 2015, and the matter was assigned to the present panel, as discussed *infra*.

[2] Linda Moran and Dayle Francesco were beneficiaries of Decedent's estate but were not named parties in the action. N.T., 3/2/11, at 35.

[3] Violet owns the family home as tenants in common with Bill and is the sole owner of the Idaho residence pursuant to the survivorship provision of the deed. N.T., 3/2/11, at 69.

Decedent's business became known as William Sweigart & Sons Sanitation Service, Inc. ("Sweigart & Sons Sanitation") when it incorporated on March 7, 1980. N.T., 3/2/11, at 42, 62, 65. Decedent was the president, Bill was vice president, and Violet was secretary-treasurer; although all three were equal shareholders of the corporation from its inception, Decedent "had no participation in the day-to-day operations of the corporation from its outset." *Id*. at 27, 28, 44–45. Bob was an employee of the corporation from its inception; for twenty years he worked full time at Westinghouse on second shift and full time for Decedent during daylight hours. N.T., 3/3/11, 153–154, 156–157. On November 7, 1980, Decedent issued a power of attorney ("POA") to Violet, appointing her as his attorney in fact. N.T., 3/2/11, at 63. Decedent resigned as president in 1982 and Bill became president. Violet remained secretary-treasurer. *Id*. at 27–28. In December, 1987, Bob was laid off from Sweigart & Sons Sanitation. *Id*. at 66. On June 12, 1992, Decedent revoked Violet's POA. *Id*. at 66.

On January 30, 1995, Violet transferred an $88,000 certificate of deposit that was titled in Decedent's and her name and deposited it in trust for Decedent and Bill. N.T., 3/2/11, at 87. Eventually, Violet invested the funds solely in her name and subsequently in a transfer-on-death ("TOD") account for Decedent. *Id*. at 87. On April 30, 2003, Violet took into her possession an account in the name of Sweigart & Sons Sanitation containing $63,000, placed it into a corporate checking account, "and wrote out a check

in the same amount to a Morgan Stanley account in her own name." *Id*. at 88. Also in April of 2003, Violet took possession of a $30,000 corporate checking account and placed it into a money market account solely in her name. *Id*. at 88. There were multiple admissions of other such transfers at trial. *Id*. at 89–93.

On November 4, 2004, Violet and Bill voted to dissolve Sweigart & Sons Sanitation. N.T., 3/2/11, at 83. On January 7, 2005, the successor corporation, Bill Sweigart Waste Water, Inc. ("Sweigart Waste Water") was incorporated and began operations in the same manner as Sweigart & Sons Sanitation out of the family home. *Id*. at 84–85. Bill and Violet were the only directors of Sweigart Waste Water; Bill was president and Violet was secretary-treasurer. *Id*. at 84. Decedent died on January 26, 2005, while undergoing heart catheterization in preparation for bladder-cancer surgery. *Id*. at 65–66, 70.

In the complaint, Appellants alleged abuse of a confidential relationship between Decedent and Appellees and that Violet acted nefariously and fraudulently in order to obtain former jointly-owned assets in her own name. Appellants maintain that as of January 31, 2011, Violet possessed holdings in her name alone amounting to $822,848.41. Appellants' Brief at 7.

After a four-day bench trial and a court-appointed Accounting, the trial court found for Appellants and against Appellees in the amount of

$149,777.00 plus costs. Broken down, the verdict was in favor of Appellants on their claim that Decedent was owed $89,812.00 for his ownership share of Sweigart & Sons Sanitation; the verdict was against Violet individually in the amount of $9,759.00, and against Bill individually in the amount of $50,206.00 for additional shareholder distributions from 2001 through 2004. The trial court further determined that Appellants failed to meet their burden of proof on all other claims.

> We previously summarized the initial procedural history as follows:
>
> [T]he parties proceeded to a four-day bench trial, which culminated in a bench verdict on March 24, 2014. On April 2, 2014, Appellees filed a timely post-trial motion. On April 3, 2014, Appellants filed a timely post-trial motion. On April 23, 2014, Appellants filed a notice of appeal to this Court, which was docketed at 1310 EDA 2014. The trial court denied Appellees' post-trial motion without prejudice for want of subject matter jurisdiction on April 29, 2014, without disposing of Appellant's post-trial motion. On May 21, 2014, Appellants filed a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), after the trial court ordered them to do so. On May 29, 2014, this Court entered an order quashing Appellant's appeal as premature. Superior Court Order, 1310 EDA 2014, 5/29/14, at 1. On August 11, 2014, Appellants entered a praecipe for judgment in the trial court, as Appellants' post-trial motion was denied by operation of law. **See generally** Pa.R.C.P. 227.1(1)(b).
>
> On August 12, 2014, Appellants filed a timely notice of appeal. The trial court did not order Appellants to file a Rule 1925(b) statement. On January 20, 2015, the trial court filed an opinion, finding that Appellants had waived all their issues on appeal due to a non-compliant Rule 1925(b) statement. Trial Court Opinion, 1/20/15, at 2.

**Sweigart I**, 5/14/15, at 2–3.

After rejecting Appellees' claim that the instant appeal was subject to quashal as premature, the initial panel addressed Appellees' and the trial court's contention that all issues were waived due to the non-concise Rule 1925(b) statement. The prior panel noted that the Rule 1925(b) statement characterized by the trial court as "rambling and repetitive" had been filed pursuant to the appeal at 1310 EDA 2014, which this Court quashed on May 29, 2014. When Appellants filed the instant notice of appeal, they were not ordered to file a new Rule 1925(b) statement, and did not file one. This Court held that "[a]s the triggering event for a second Rule 1925(b) statement was the second notice of appeal, Appellants cannot be penalized for not filing a compliant Rule 1925(b) statement when they were not ordered to file a statement at all." *Sweigart I*, 5/14/15, at 6. Thus, the prior panel concluded that Appellants could not be subject to waiver based on the Rule 1925(b) statement filed in connection with an appeal that had been quashed as premature. Since the trial court could have ordered Appellants to file a new Rule 1925(b) statement but did not do so, we concluded that Appellants' issues were not subject to waiver. *Id*.

As noted, the prior panel remanded the record to the trial court for the preparation of a supplemental opinion, which has been filed. This case is now ready for disposition.

Appellants raise the following three issues[4] for our review:

    I.    Did the learned Judge err in not finding that [Appellants] proved [a] confidential relationship as a matter of law and the opportunity for [Appellees] to take advantage of that relationship as to all claims made by William Sweigart with credible evidence sufficient to shift the burden of proof to [Appellees] where the evidence supporting the claim is uncontested, non-testimonial and conclusively established.

    II.    Did the learned Judge err in not finding that [Appellees], by electing to rest their case after [Appellants'] case in chief, and not offering any testimony or exhibits, failed to meet their burden of proving by clear and satisfactory evidence, that all dealings involving the parties were indeed fair, conscientious, beyond the reach of suspicion and that [Appellees] used scrupulous fairness and good faith in dealing with [Appellants'] Decedent, William Sweigart[,] and refrained from using their position to William Sweigart's detriment and to their own advantage.

    III.    Did the learned Judge err in not imposing a constructive trust on those certain investment accounts in the name of Violet Sweigart at Wells Fargo Bank and wherever else the subject funds may be traced if necessary, where [Appellants] substantially identified the assets sought to be reconveyed, [Appellees] would be unjustly enriched if permitted to retain the subject property and where the supporting evidence is uncontested, non-testimonial and conclusively established.

Appellants' Brief at 4–5 (full capitalization omitted).

Appellants first argue that the trial court erred in failing to find the existence of a confidential relationship between Appellees and Decedent. Appellants suggest that because Violet and Bill were equal shareholders with

---

[4] Appellants' fourth issue addressed the trial court's finding of waiver, and that issue was reversed in **Sweigart I**, as discussed *supra*.

Decedent, there was a fiduciary relationship and a concomitant confidential relationship between them. Appellants' Brief at 14. Appellants also assert that a confidential relationship existed because Decedent granted Violet a POA, and she had the responsibility of managing Decedent's business. *Id*. at 16.

"In reviewing a decision of a court after a non-jury trial, we will reverse the trial court only if its findings are predicated on an error of law or are unsupported by competent evidence in the record." ***Deutsche Bank Nat. Trust Co. v. Gardner***, ___ A.3d ___, ___, 2015 PA Super 219, *2 (Pa. Super. filed October 14, 2015) (citing ***Boehm v. Riversource Life Ins. Co.***, 117 A.3d 308, 321 (Pa. Super. 2015)). "We may interfere with the trial court's conclusions only if they are unreasonable in light of the trial court's findings." ***Zappile v. Amex Assur. Co.***, 928 A.2d 251, 254 (Pa. Super. 2007).

> [I]t has long been the standard in Pennsylvania that whether a confidential relationship has arisen poses a question of fact:
>
> > "The general test for determining the existence of a confidential relationship is whether it is clear that the parties did not deal on equal terms." ***Frowen v. Blank***, 493 Pa. 137, 425 A.2d 412, 416 (Pa. 1981). A confidential relationship was defined in ***Brooks v. Conston***, 356 Pa. 69, 51 A.2d 684 (Pa. 1947), as follows:
> >
> > > Confidential relation is any relation existing between parties to a transaction wherein one of the parties is bound to act with the utmost good faith for the benefit of the other party and can take

- 8 -

> no advantage to himself from his acts relating to the interest of the other party. This Court has recently defined confidential relationship in ***Drob v. Jaffe***, 351 Pa. 297, 41 A.2d 407 (Pa. 1945). Mr. Justice Horace Stern said, "[A] confidential relationship is not limited to any particular association of parties but exists wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest."

*Id*. at 688, 808 A.2d 572 [some internal citations omitted]. A confidential relationship "is not confined to any specific association of the parties; it is one wherein a party is bound to act for the benefit of another, and can take no advantage to himself. It appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed." ***Leedom*** [***v. Palmer***, 117 A. 410, 411 (Pa. 1922)]. In some cases, as between trustee and *cestui que trust*, guardian and ward, attorney and client, and principal and agent, the existence of a confidential relationship is a matter of law. In others, as between parent and child or brother and sister, **the existence of a confidential relationship is an issue of fact to be established by the evidence. Although the mere existence of kinship does not, of itself, give rise to a confidential relation, it is a factor to be considered.**

***[S]ee also Biddle v. Johnsonbaugh***, 444 Pa.Super. 450, 664 A.2d 159, 162 (Pa.Super. 1995) ("The existence of a confidential relationship is a question of fact to be established by the evidence."). Thus, the existence of a confidential relationship requires a fact-sensitive inquiry not to be disposed rigidly as a matter of law.

- 9 -

***Yenchi v. Ameriprise Fin., Inc.***, ___ A.3d ___, ___, 2015 PA Super 195, *4–5 (Pa. Super. filed September 15, 2015) (some internal citations omitted) (emphasis added).

A fiduciary duty arises from a confidential relationship, which has been described as follows:

> The Supreme Court has determined that a confidential relationship and the resulting fiduciary duty may attach wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest. In some cases, as between . . . guardian and ward, attorney and client, and principal and agent, the existence of a confidential relationship is a matter of law. In other cases, where these relationships do not exist, confidential relations may still arise based on the facts and circumstances apparent on the record.

***Basile v. H&R Block, Inc.***, 777 A.2d 95, 101-102 (Pa. Super. 2001) (internal citations and quotation marks omitted).

In refusing to find a confidential relationship, the trial court stated that the mere presence of a POA is but one factor to consider, and it is not conclusive. Trial Court Supplemental Opinion, 7/16/15, at 4. The trial court determined that the burden would shift to Appellees to show the absence of undue influence if the following three elements are met: 1) a confidential relationship, 2) a weakened mental intellect, and 3) a substantial benefit. ***Id***. The trial court stated:

> Although [Appellants] may have adduced sufficient facts to show that, at one point, Defendant Violet Sweigart had a [POA] over [D]ecedent . . . this Court found that the [POA] was not used to the detriment of [D]ecedent and therefore was insufficient as a

> matter of law to support the existence of a confidential relationship between the parties.

Trial Court Supplemental Opinion, 7/16/15, at 4–5. The trial court also concluded that Appellants failed to dispute evidence introduced by Appellees that the POA was revoked in 1992. Finally, the court determined that Appellants failed to prove that Violet received a substantial benefit from the POA when it was in place. Thus, the trial court held that the burden did not shift to Appellees to prove by clear and convincing evidence the absence of undue influence. We agree.

The trial court found that Appellants failed to meet the elements required to establish that a confidential relationship existed between Decedent and Appellees, rejecting Appellants' complete focus on the existence of a POA. The mere existence of a POA does not establish a confidential relationship as a matter of law. *Estate of Ziel*, 359 A.2d 728, 734 (Pa. 1976). The trial court based its decision on the testimony of the parties, the relationship Appellees had with Decedent prior to his death, and the trial court's conclusion that despite Decedent's physical impediment, he was fully aware and cognizant of his transactions. As our review of the complete record compels the conclusion that the trial court's findings are supported by competent evidence in the record, there is no basis upon which to reverse. *Deutsche Bank*, 2015 PA Super 219 at *2.

Appellants' second issue presents a list of presumed voided and voidable transactions pursuant to the precept that where a confidential

- 11 -

relationship is established, "the presumption is that the transaction is void, and the party seeking to benefit has the burden of proving affirmatively a compliance with equitable requisites and thereby overcome the presumption." Appellants' Brief at 23 (citing **Moyer's Estate**, 19 A.2d 467 (Pa. 1941)). Because we previously affirmed the trial court's conclusion that a confidential relationship did not exist, there was no shift of the burden to Appellees to overcome a presumption that any of the transactions were void or voidable. This issue lacks merit.

Appellants' final issue asserts that the trial court erred in failing to impose a constructive trust on certain investment accounts in Violet's name at Wells Fargo Bank and "wherever else the subject funds may be traced." Appellants' Brief at 38. Appellants' argument on this issue consists of three pages of general citations regarding constructive trusts. Appellants' Brief at 38–41. Their claim is that Violet failed to explain why she moved assets that were jointly held with Decedent "into the name of Violet in trust for [Decedent] or in trust for [Decedent] and [Bill]" and thereafter "into her name alone." **Id**. at 41. In sum, Appellants' averment is that a constructive trust should have been imposed because of the alleged wrongful taking by Violet and Bill of profits and cash from Sweigart & Sons Sanitation, which rightfully belonged to Decedent, and therefore now belongs in Decedent's estate.

Appellees respond that Appellants failed to produce any evidence to suggest that Appellees wrongfully removed any profits or cash from Sweigart & Sons Sanitation that rightfully belonged to Decedent. Appellees' Brief at 21. They also maintain that Appellants failed to offer a witness "with the required expertise to establish these claims." Appellees' Brief at 23.

A constructive trust arises:

when a person holding title to property is subject to an equitable duty to convey it to another on the ground he would be unjustly enriched if he were permitted to retain it. The necessity for such a trust may arise from circumstances evidencing fraud, duress, undue influence or mistake. The controlling factor in determining whether a constructive trust should be imposed is whether it is necessary to prevent unjust enrichment.

***Nagle v. Nagle***, 799 A.2d 812, 819 (Pa. Super. 2002) (internal citations omitted). The trial court stated:

Because this [c]ourt did not find a confidential relationship existed between the parties in this case, either as a matter of law or as a matter of fact, imposing a constructive trust over [Appellees'] assets would be inappropriate in this case. Instead, to address the issue of whether [Decedent] was owed money by [Appellees] for his ownership shares in Sweigart & Sons, this [c]ourt ordered an Independent Accounting of the business by a court appointed Master, Donald J. Weiss, Esq.

The court-ordered Independent Accounting valued Sweigart & Sons to be worth $396,912 when the business closed its doors at the end of the 2004 tax season. Moreover, the Independent Accounting found that [Decedent] held a 33.33 percent minority share in the company, for which he was not compensated by [Appellees] at the dissolution of the business. Based on the findings of the Independent Accounting, this court found [Decedent's] share in the business to be worth $89,812, and granted relief in favor of [Appellants] in that amount. In addition, the Independent Accounting found that [Decedent] was owed shareholder distributions from the business for the years

- 13 -

2001 through 2004. The Independent Accounting valued these distributions at $59,695. This Court also granted relief to [Appellants] in this amount plus court costs.

Trial Court Supplemental Opinion, 7/16/15, at 7.

The credibility of witnesses is for the factfinder, and we will not disturb its credibility determinations absent an abuse of discretion. ***In re Estate of Aiello***, 993 A.2d 283 (Pa. Super. 2010); ***In re Estate of Dembiec***, 468 A.2d 1107, 1110 (Pa. Super. 1983). We have no hesitation in concluding that the trial court's findings were based upon legally competent and sufficient evidence, and there was no error of law or abuse of discretion by the trial court. ***In re Bosley***, 26 A.3d 1104, 1107 (Pa. Super. 2011); ***Estate of Reichel***, 400 A.2d 1268, 1269–1270 (Pa. 1979).

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/2/2015