John Eichman, Receiver of the North Schuylkill Mutual Fire Insurance Co., *v.* John Hersker, Appellant.

*Insurance—Mutual insurance companies—Money borrowed to pay losses —Assessments.*

Assessments may be levied by a mutual insurance company upon its policy holders to repay money borrowed for the purpose of paying actual losses by fire.

*Mutual insurance companies—Assessments—Statute of limitations.*

Where a policy holder in a mutual insurance company contracts to pay "such sum or sums of money, and at such time or times as the board of directors of said company may for the purpose of paying losses by fire,

and the necessary expense of said company require," the statute of limitations does not begin to run in favor of the policy holder until an assessment be made, notwithstanding the company was dilatory in levying the assessments; and it is immaterial whether such a contract is contained in a premium note, or is based upon the charter or by-laws of the association.

*Equity—Collateral attack upon decree—Mutual insurance—Receivers.*

Where a receiver is appointed over a mutual insurance company, and the bill praying for the appointment avers insolvency, which the company by its answer admits, and the receiver subsequently obtains an order directing the levying of an assessment, a policy holder in an action by the receiver to recover an assessment cannot aver as a defense, in this collateral proceeding, that the company was not insolvent at the time the receiver was appointed, and when the assessment was made.

*Equity—Equity practice—Parties—Corporations.*

In a bill in equity against a mutual insurance company for the appointment of a receiver it is not necessary to join the policy holders as parties defendant.

*Mutual insurance—Fraud—Estoppel—Payment of assessments.*

A policy holder in a mutual insurance company cannot, after he has paid several assessments and after other persons have become members of the association, aver as a defense to the payment of a subsequent assessment that he was induced to become a member of the association through the fraudulent misrepresentations of the agent who took his application, if it appears that he had knowledge of the fraud before he paid the assessments. By paying assessments levied after knowledge of the fraud perpetrated upon him, he held himself out to all who afterwards became his co-members of the company as one bound to share the burdens of the company with them; and the receiver has a right to insist that he shall join with them in contributions.

*Practice, C. P.—Trial by court without jury—Act of April 22, 1874.*

Where a case is tried by the court without a jury under the act of April 22, 1874, P. L. 109, the judge is not bound to preface his findings of facts with all the evidence in detail on which the finding is based.

Where, in an action of assumpsit to recover an assessment from a member of a mutual insurance company, the case is tried by the court without a jury, the judge after finding that the defendant was induced to become a member by fraudulent misrepresentations, may further find, if the evidence is sufficient, that after a knowledge of the fraud defendant continued to pay assessments, and that after all this, other persons became members, and from these findings he may draw the legal conclusion that the defendant could not avail himself of the fraud as a defense.

Where a case is tried by the court without a jury, and there is evidence to support the judge's findings of fact, the Supreme Court will not set aside the findings of fact, merely because of doubts on their part as to the correctness of the findings.

Argued Feb. 21, 1895. Appeal, No. 301, Jan. T., 1895, by defendant, from judgment of C. P. Schuylkill Co., May T., 1886, No. 12, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover assessment on policy No. 628. Before PERSHING, P. J.

This case and the next succeeding case were tried together by the court without a jury under the act of April 22, 1874, P. L. 109.

The facts appear by the opinion of the Supreme Court.

The court entered judgment in favor of plaintiff in this case for $547.22, and in the next succeeding case for $497.46.

Exceptions to the judge's findings of fact and conclusion of law were overruled.

*Errors assigned* were in overruling exceptions as above.

*A. W. Schalck and James Ryon*, for appellant.—Defendant was relieved of payment of the assessment by the fraud practiced upon him: Sunbury Fire Ins. Co. v. Humble, 100 Pa. 495; New Era Life Assn. v. Weigle, 128 Pa. 577.

The claim is barred by the statute: Price v. Yates, 7 W. N. C. 51; Laforge v. Jayne, 9 Pa. 410; Pittsburg & Connellsville R. R. v. Byers, 32 Pa. 22; Pittsburg & Connellsville R. R. v. Graham, 36 Pa. 79; Hayes v. Lycoming Fire Ins. Co., 99 Pa. 621; Sinkler v. Turnpike, 3 P. & W. 149; Scovill v. Thayer, 105 U. S. 143; Terry v. Tubman, 92 U. S. 156.

Notwithstanding the assignment to Sollenberger the directors could and should have met in due time to levy their assessment, and such assessment would have been valid and enforceable: West Branch Ins. Co. v. Macklin, 66 Pa. 34; Schimpf v. Lehigh V. M. Ins. Co., 86 Pa. 373; Germantown's P. R. W. Co. v. Fitler, 60 Pa. 124; Bunn's and Lane's App., 105 Pa. 49; Bell's App., 115 Pa. 88; Bailey v. Coal Co.; 139 Pa. 213; Hamilton v. R. R. Co., 144 Pa. 34; 16 Am. & Eng. Ency. of Law, 69, 70.

There are no creditors here except the directors themselves, who might have made their assessment at any time, and they cannot escape the legitimate consequences of their own delay and negligence and avoid the bar of the statute by hiding

behind a receiver of their own creation, himself a brother director : Hawkins v. Glenn, 131 U. S. 319 ; Girard Bank v. Bank of Penn Twp., 39 Pa. 92 ; Glenn v. Liggett, 135 U. S. 533 ; Sanger v. Upton, 91 U. S. 56 ; Baker v. Bank, 9 Met. 182 ; Yeager v. Scranton Trust Co., 14 W. N. C. 296 ; Bank v. Bridges, 20 W. N. C. 43 ; Shackamaxon Bank v. Dougherty, 20 W. N. C. 297 ; McKelvy's App., 72 Pa. 409.

The right of the company to cancel policies and thus terminate the contract has been constantly recognized : Akers, Receiver, v. Hite, 94 Pa. 394 ; Atlantic Ins. Co. v. Fitzpatrick, 2 Gray (Mass.), 279 ; May on Insurance (2d ed. 1882), p. 849, § 555 ; Columbia Ins. Co. v. Masonheimer, 76 Pa. 138.  To give effect to the spirit of the statute, the law fixes the time when the cause of action shall be taken to have accrued by the duty of diligence required of the party: Steele v. Steele, 25 Pa. 154 ; Todd's App., 24 Pa. 429 ; Pittsburg etc. R. R. Co. v. Byers, 32 Pa. 22 ; McCully v. Pittsburg etc. R. R. Co., 32 Pa. 25 ; Pittsburg R. R. Co. v. Graham, 36 Pa. 77 ; Rhines v. Evans, 66 Pa. 192.

On the question of the lapse of time equity follows the analogy of the statute of limitations ; and the bar of the statute cannot be avoided or overcome by a resort to a court of equity : Todd's App., 24 Pa. 429 ; York's App., 110 Pa. 69 ; Penna. R. R. Co.'s App., 125 Pa. 189 ; Phila. Trust Co. v. Coal & Iron Co., 139 Pa. 534 ; Trickett on Limitations, p. 214, pars. 168, 169 ; Girard Bank v. Penn Twp. Bank, 39 Pa. 92 : Finkbone's App., 86 Pa. 368 ; Milne's App., 99 Pa. 483 ; Bauserman, Admr., v. Blunt, 147 U. S. 647 ; Trickett on Liens, p. 296, §§ 225–227 ; 13 Am. & Eng. Ency. of Law, p. 726, and note 1.

The receiver, levying an assessment, must proceed to do so on the same principles as the board of directors would : Savage v. Medbury, 19 N. Y. 32 ; Lawrence v. Nelson, 21 N. Y. 158.

*George J. Wadlinger*, for appellee.—Findings of facts are not reviewable : Griffith v. Sitgreaves, 90 Pa. 161 ; Jamison v. Collins, 83 Pa. 359 ; Bradlee & Co. v. Whitney, 108 Pa. 362 ; Southern Maryland R. R. v. Moyer, 125 Pa. 506 ; Lee v. Keys, 88 Pa. 175 ; Brown v. Dempsey, 95 Pa. 243.

The statute of limitations did not commence to run until the date of the assessment: Smith v. Bell, 107 Pa. 352 ; Solly v. Moore, 1 Dist. Rep. 688 ; Scovill v. Thayer, 105 U. S. 143.

A mutual insurance company is bound to assess enough to pay its losses, no matter how many assessments it may require: Rinehart v. Allegheny Ins. Co., 1 Pa. 359; Coston v. Allegheny Ins. Co., 1 Pa. 322; Hummel & Co.'s App., 78 Pa. 320; Diehl v. Adams Ins. Co., 58 Pa. 443.

A failure to collect one assessment is not a waiver of the right to collect a subsequent one: Crawford Ins. Co. v. Cochran, 88 Pa. 230.

There is no doubt of the power of the court (or a judge at chambers) to make a decree ordering an assessment such as this: Bank v. Gillespie, 115 Pa. 564; Sanger v. Upton, 1 Otto (U. S.), 56; Kennedy v. Gibson, 8 Wallace (U. S.), 498; Cadle, Receiver, v. Baker, 20 Wall. (U. S.), 650; Rec. of Gt. West. Tel. Co. v. Gray, 27 Am. L. Reg. 167.

The validity of an assessment made by a receiver by order of a court of equity of competent jurisdiction cannot be inquired into collaterally: Beeber v. Langley, 12 Md. Law Rec. 123; Third Reformed Church's App., 88 Pa. 503; Kelsey v. Murphy, 26 Pa. 78; Chandler's App., 39 Leg. Int. 347; Herman on Estoppel, sec. 1299; Taylor v. Cornelius, 60 Pa. 187.

OPINION BY MR. JUSTICE DEAN, October 7, 1895:

On June 8, 1874, John Eichman, now the plaintiff, receiver, and ten other citizens of Schuylkill county, secured a charter for the North Schuylkill Mutual Fire Insurance Company of Mahanoy City. They at once organized the company and commenced to solicit insurance, appointing Carl Scheuerman general agent; he, on 15th of July, 1874, called on the defendant, John Hersker, and urged him to take out a policy, representing the company was doing a prosperous business and had then issued about five hundred and twenty-five policies; Hersker made application for a $2,000 policy. The application is as follows:

"For value received, and in consideration of a policy of insurance to be issued by the North Schuylkill Mutual Fire Insurance Company, of Pennsylvania, upon the approval of my application of insurance in said Company of this date, I promise to pay the said Company such sum or sums of money, and at such time or times, as the Board of Directors of said Company may, for the purpose of paying losses by fire, and the

necessary expense of said Company, require,—payable within thirty days after notice and demand.

" CARL SCHEUERMAN,                    JOHN HERSKER,
          " Agent.                            Applicant."

The policy contains this stipulation:

" In consideration of            dollars in hand paid, and hereby acknowledged, and an obligation to pay all such sum or sums of money, and at such time or times, as the Board of Directors may, for the purpose of paying losses by fire, and the necessary expenses of said Company, require, do insure," &c.

Hersker also delivered to the company his premium note.

It appeared that Scheuerman, the agent, had falsely represented the number of policies then in force to Hersker; instead of about five hundred and twenty-five, Hersker's made the twenty-fifth, the first policy having been No. 501 instead of No. 1. Later, on December 8, 1874, Scheuerman solicited and obtained an application from Hersker for a second policy in the sum of $2,200; the application and policy being the same in form as the first.

Two assessments were made on these notes, No. 1, October 6, 1875, of 1½ per cent, No. 2, May 10, 1876, of a like percentage, and both assessments were paid by Hersker. On May 17, 1876, a destructive fire occurred in Mahanoy City, by which the company was a very heavy loser; but notwithstanding this, a number of policies were taken out after that date, the last being No. 718. Nearly all the losses by fire occurred prior to the issuing of the second policy, No. 628, and a few before the issue of the first, No. 525. The losses, however, were so severe, that property owners were greatly deterred from becoming members; as a result, the managers were discouraged, and on 6th of April, 1877, they resolved to issue no more policies, and that all policies issued should terminate the 10th of May, 1877; at the same time they further resolved to surrender to the policy holders all premium notes on payment of all unpaid dues and assessments. So far as the record shows, none of the policy holders accepted this method of ending their relations with the company. On December 21 of same year, the company made an assignment to I. Y. Sollenberger, Esq., for the benefit of creditors; he accepted the trust,

and performed his duties until 1st of September, 1884, when he filed his account and resigned.

Before the assignment, the board of directors had laid two more assessments, each of 1½ per cent, the first, No. 3, January 11, 1877; and the second, No. 4, May 8, 1877. These Hersker also paid. But a small part of the last assessment was collected when the assignee assumed his duties. The aggregate of the four assessments was $13,806.33, of which, owing to insolvency of members, only about $6,000 was collected. By the account of assignee Sollenberger, confirmed absolutely, there was a balance in his hands, when he resigned, of only $781.18.

William Krause, the holder of policy No. 533, issued 24th of July, 1874, for $1,200, sustained a loss by fire of all the property insured under it on the 10th of October, 1875; being indebted to Solomon Lowenstein, he assigned his policy and claim to him; Lowenstein brought suit against the company, obtained judgment for $1,008.50, and issued execution, which was returned "no goods," the company having made assignment before writ came to sheriff's hands. The company having borrowed money in bank, and being unable to take up its notes when due or when payment was insisted on, made a loan from John Phillips to take up this paper, and then confessed a judgment to him against the company for the amount of the loan, $2,852.16. The company, besides the Lowenstein and Phillips claims, owed some smaller ones at the date of assignee Sollenberger's resignation; the entire indebtedness then was $4,660.22, to pay which it had in cash the balance due from the assignee, $781.18. Lowenstein, as a judgment creditor, filed a bill for an injunction to restrain the officers from further management of the affairs of the company, and for the appointment of receiver; the company, in answer filed, concurred in the prayer for a receiver, when the court accordingly, on December 1, 1884, appointed John Eichman, this plaintiff.

On January 19, 1885, the receiver presented his petition to the court, setting out the financial condition of the company, as already noticed, and, further, stating that there remained only $500 of the four assessments already made collectible, which added to the $781.18 received from assignee Sollenber-

ger, made only $1,281.18 available for payment of $4,660.22 of debts, and leaving unprovided for, $3,379.04; that the amount of insurance held by solvent policy holders, subject to further assessment, was $35,000, and that an assessment of 11 per cent would realize sufficient to pay all debts, as well as expense of collection; he therefore prayed the court to authorize an assessment of 11 per cent. On 19th of January, 1885, the court made a decree as prayed for and afterwards, on application of the receiver, modified the order, so that the assessment would operate equitably on each policy, according to the rate of insurance. At the instance of Jacob West, a policy holder, on the 17th of May, 1886, a rule was awarded on the receiver to show cause why the order for assessment should not be rescinded. On March 28, 1887, this rule was discharged. West again, on December 3, 1888, petitioned the court to vacate its former decree and rescind the order for the assessment, and the prayer was refused; thereupon, West appealed to this court, and his appeal was quashed; see Lowenstein v. Insurance Co., 132 Pa. 410. The court filed no reasons for quashing; but one, that appeal was not taken in time, was so obvious and conclusive that the decree to quash was made at bar.

The receiver levied the assessment of 11 per cent in accordance with the order, and Hersker having refused payment, on the 1st of March, 1886, he brought suit in the common pleas; the defendant pleaded non assumpsit, payment, etc., with right to add special pleas. The case came on for trial, and was submitted both as to facts and law to the court, Judge PERSHING sitting as trial judge. He found for plaintiff, and defendant appeals, assigning for error sixteen findings of fact and eighteen conclusions of law.

As to the findings of fact, there was evidence to support each of them; true, some of them were found on the testimony of interested witnesses; as to nearly all there was contradictory testimony, or testimony which warranted inferences more or less antagonistic, the truth depending, in some measure, on the character and appearance of the witness. An examination of the printed testimony, independent of the opinion of the learned judge of the court below, leads us to no certain conclusion; the argument of counsel on both sides is so clouded by accusation, irrelevant matter and acerbity, that it affords us but little

aid in a review of the testimony bearing on the findings; as to some of them, taking the printed testimony before us, we would not perhaps have reached the same result; but we have decided, in effect, more than' once, that we will not set aside findings of fact, merely because of doubts on our part as to their correctness.    As is said in Bradlee v. Whitney, 108 Pa. 362, and repeated by the present chief justice in Southern Maryland Co. v. Moyer, 125 Pa. 506 : " The court cannot go behind the findings of fact by a referee, except where the assignment of error is such as could be heard and determined if the trial had been according to the course of the common law before a jury. If the evidence is relevant and proper and the findings of fact are reasonably inferred therefrom, we must, in the absence of fraud, accept the report as correct and true.    We cannot consider the weight or the conflict of evidence, or the veracity of the witnesses."    And the rule as to the findings of the court or referee under the act of 1874 is the same.

As to the legal conclusions of the court from the facts found, while not passing upon them in the order in which the errors are assigned, we will notice them briefly in the order in which they stand in our judgment in relation to the issue :

1. As to the nature of the indebtedness, which the receiver sought to pay by the assessment.    A large part of it the directors of the company were personally responsible for.    The company had borrowed money from banks, which it could not pay ; a loan was made from Phillips to pay the banks ; judgment was confessed by the company to Phillips, and the directors, also, as individuals, confessed judgment to him as additional security.    Appellant seeks to draw a distinction between this debt and one owing directly by the company to policy holders. We can see none.    The debt to the bank was created by borrowing to pay actual losses by fire in anticipation of payments on assessments.    In making themselves individually liable, they are in equity substituted as creditors of the company in place of those who had suffered losses.    No fraud is intimated ; it is nowhere averred the money was not borrowed to pay what the company actually owed, or that every cent of it was not used for that purpose.    The debt is a valid one, and the company is as much bound in morals and law to pay it, as if it represented a policy on a burned barn.    As is ruled in Orr v. Insurance Co.,

114 Pa. 387 : " The losses were paid to the persons entitled, soon after they became due, with money borrowed for the purpose. . . . The company still owes the money, and the defendant has not paid his proportion.  Did the borrowing of money and paying the losses immediately discharge the members of the company from liability to pay assessments according to their contract ? "   It is decided in the negative.

2. As to the statute of limitations : The assessment was not made within six years from the date of the policies and the premium note, nor within six years from the date of the losses, the payment of which had created the debt now sought to be satisfied by assessment.

As already indicated, this debt must be treated as if it were the original loss ; no assessment was ever laid which paid it. The defendant's contract is : " I promise to pay the said company such sum or sums of money and at such time or times as the board of directors of said company may for the purpose of paying losses by fire and the necessary expense of said company require."   The point is directly ruled by Smith v. Bell, 107 Pa. 352, and the many cases therein cited.   It is said in that case : " A sufficient answer to the plea of the statute of limitations is, that the note was not payable at once, or on demand, but is payable by installments, upon the happening of a loss and assessments therefor ; and so until an assessment is made, the statute does not begin to run."   Counsel for appellant attempt to draw a distinction between Smith v. Bell and the case in hand, in the facts, which renders the rule inapplicable. It is argued, the company in that case was organized under the act of 1856, which makes all members liable for all losses and expenses ; that the policy holder in that case gave no premium note, but only contracted to comply with the charter and by-laws.   But we cannot see that the form of the obligation affects the application of the principle ; the contract is the same, whether it be specified in and evidenced by a premium note, or resort must be had to the charter and by-laws to ascertain it.   Nor is it any answer to say the company was dilatory in levying the assessment.   Mere indulgence in levying the assessment will not bar the right ; delay in enforcing collection after levy and demand would.   As the suit was brought within six years from the date of the assessment to pay losses, the plea of the statute will not avail defendant.

3. It is urged the decree authorizing the assessment did not conclude defendant; that he still had a right to go behind it and make defense on the merits by showing the financial condition of the company did not warrant it. As to this, these facts are undisputed. Lowenstein, in his bill, averred the company was insolvent; the company, in its answer, admitted it; the court, by the appointment of the receiver, adjudicated it; there was no appeal from this final judgment of a court of full jurisdiction. Then, in less than sixty days, on petition of the receiver setting out the debts, assets, and praying for authority to make an assessment of eleven per cent, the court made the decree as prayed for. Admit that a full exhibit in detail of the condition of the company, giving each policy holder by name, specifying the losses and every dollar that had ever been collected to pay them, should have been made as preliminary to a decree; the failure to do it could only have been taken advantage of on appeal from the final decree of the court, adjudging the company bankrupt and authorizing the assessment. The evidence shows that afterwards, on the application of West, the court, in a prolonged hearing, heard evidence fully on the whole subject, and refused to rescind its decree; but, even if this had not been so, it would be intolerable to hold that the decree as to necessity for assessment could be questioned in a collateral proceeding by every policy holder, when demand is made upon him for contribution towards losses; and such has been the law in an unbroken line of decisions from the Duchess of Kingston's case to one like unto this in its facts, Lycoming Ins. Co. v. Langley, 12 Md. L. R. 123.

Nor does it affect the finality of the decree, that the defendant was not made by name a party to Lowenstein's bill in equity, and was not notified of the application for authority to lay the assessment. The court below properly decided that making the company a party was sufficient; service on the proper officers of the corporation made every policy holder a party, and the answer of the company, not before decree dissented from, will now, after decree unappealed from, be deemed as concurred in by the policy holder.

4. It is maintained by defendant, the contract cannot be enforced because it was induced by the false representations of

the company. Hersker testifies that when Scheuerman, the general agent, solicited the application, he stated to him the company was doing a prosperous business, and about five hundred and twenty-five policies had been issued, when, in fact, the one then being solicited made only the 25th. Scheuerman being dead, and there being no other witness to what was said when the contract was made, the court found as a fact, on Hersker's testimony, that such false statement was made ; but the court also found the fact that after knowledge of this false statement Hersker paid assessments and did not repudiate the contract, and therefore he is estopped from now repudiating it, as the rights of third parties have intervened. Hersker's policies were issued in 1874; other policies continued to be issued, down to May 10, 1877. When he paid assessments levied after knowledge of the alleged fraud upon him, he held himself out to all who afterwards became his co-members of the company as one bound with them to share in the burdens of the company; they have a right now, and the receiver, as representing them, has a right to insist he shall join with them in contributions. The case of Dettra v. Kestner, 147 Pa. 566, on the facts here, rules the point against the appellant. The opinion of Judge ENDLICH in that case is so full and conclusive as to the law that we can add nothing by way of reason or authority. This court, in affirming the decree, said : " The facts constituting the alleged fraud were substantially found by the court ; but it was also found that the rights of innocent third parties afterwards intervened, and for that reason the learned judge, in his second conclusion of law, held, that the fraud practiced on the defendant could not avail him in this suit. . . . The application of that principle to the facts found by the court practically disposes of the case." And the judgment was affirmed. It is argued, that Dettra v. Kestner is not in point, because the " innocent third parties " are wanting here ; but the facts as stated in the 20th finding place the innocent third parties before us. It is futher said, such finding was outside the legitimate functions of the judge, under the act of 1874. We think the functions of the judge were to find the facts on which he must base his decree ; having found that a fraud was perpetrated on Hersker at the inception of the contract, he had, staring him in the face, the further facts that

after knowledge of the fraud Hersker kept up his membership and continued paying assessments, and that after all this others became members. He could do nothing else than draw the legal conclusion in Dettra v. Kestner. Nor was he bound to preface his findings of facts with all the evidence in detail on which the findings were based. Our examination of the evidence convinces us there was sufficient to warrant the findings; whether, from all this mass of contradictory evidence, they were certainly the truth is for the conscience of the court below.

5. There is nothing to convince us the assessment was arbitrary or excessive; the unproductiveness of the preceding four assessments, and the attitude of policy holders, as apparent from this litigation, indicate with reasonable certainty that this one will not more than discharge the existing indebtedness.

We have endeavored to pass upon what we consider the material questions of law and of fact in this issue. Those relating to the illness of the judge, and his physical inability to sufficiently weigh and consider the abundant evidence, both oral and documentary, are not important, and are not borne out by the opinion and judgment before us. He clearly grasped the whole case in all its vexatious details; eliminated therefrom in his findings all irrelevant matter, and has presented to us a concise statement of the facts and law which prompted his decree. It is not improbable that after hearing the witnesses, wading through the papers presented, and hearing arguments of counsel, tinctured with so much acrimony as is present on these paper-books, he was physically and mentally weary; if so, the opinion he filed shows a speedy recovery.

The judgment is affirmed, and the appeal is dismissed at costs of appellant.