Gerner et al. *v.* Kespelher et al., Appellants.

Argued March 19, 1945. Before Maxey, C. J., Drew, Linn, Patterson, Stearne and Jones, JJ.

*Carroll Caruthers,* with him *Andrew G. Uncapher,* for appellants.

*Marquis M. Smith,* for appellees.

Opinion by Mr. Justice Allen M. Stearne, April 9, 1945:

The question here involved is whether plaintiffs, as surviving executrices of the estate of their deceased mother, or defendants, her son and daughter-in-law, are entitled to shares of a federal savings and loan association which were held in the names of the defendant Louis C. Kespelher and the decedent jointly with the right of survivorship.

Plaintiffs filed a bill in equity to recover from Louis C. Kespelher the sum of $2,975 averring that defendant had caused the same to be withdrawn from the bank account of his mother, a woman then 77 years old, had deposited the funds to his own account and had subsequently purchased shares in a federal savings and loan association in the amount of $2,900 in the joint names of himself and his mother with the right of survivorship. The bill alleged that the purchase of the shares was

without the knowledge of the mother and in fraud of her rights. It was also averred that the husband-defendant "for a number of years prior to the death of Annie Kespelher . . . assisted her in her banking and some other business". The defendant filed an answer raising preliminary questions of law. At argument it appeared that since the filing of the bill he had caused the shares to be transferred to his wife and the court thereupon joined her as a party defendant and issued a preliminary injunction restraining defendants from alienating the shares. The answer raising preliminary questions was dismissed; defendant then filed an answer denying that the transactions were without the knowledge of the decedent and that they were fraudulent.

At the hearing upon the merits plaintiffs introduced the testimony of officials of the bank in which the decedent had deposited her money that the decedent herself, on May 21, 1940, gave written and signed notice of withdrawal for the sum of $2,975. On the expiration of the notice period, it was testified, the son acting under a power of attorney previously executed by the decedent on November 1, 1928, withdrew this sum by a check bearing his own signature as attorney. It was admitted that the fund was subsequently deposited to his account. Plaintiffs also introduced the evidence of the officials of the savings and loan association who testified that the joint account was opened upon an application bearing the signatures of the decedent and her son; that they were not personally acquainted with the decedent, and that the card containing her signature had been brought to them by the husband-defendant. It was not denied that all of the signatures of the decedent were in her own handwriting. These witnesses also established the fact that dividend checks payable in the alternative to the decedent or Louis C. Kespelher had been sent to him, and that he had endorsed and cashed the same.

Plaintiffs having rested, defendants called the physician who had attended the decedent frequently during

the period from September 1, 1940, to the date of her death on April 13, 1941. He stated that she was "absolutely of sound mind during that period" and mentally alert. He was asked whether she knew the nature of her business transactions with her son and he replied without qualification, "Absolutely". This testimony was not contradicted in any way and no evidence was offered to show that the decedent was suffering from any illness of a nature likely to impair her powers of will or mind.

Upon this evidence the trial judge found that a confidential relation existed between the son and his mother which imposed upon him the burden of affirmatively proving that the gift to him of a joint interest in the shares with the right of survivorship was a free and voluntary gift obtained by him without the exercise of undue influence or fraud. The judge concluded that defendants had failed to sustain this burden and entered a decree nisi making the injunction absolute and ordering them to pay to plaintiffs the sum of $2,975 with 6 percent interest from the date of the withdrawal from the decedent's account. The court in banc dismissed defendants' exceptions and entered a final decree accordingly. This appeal was then taken by defendants.

The decree of the court below must be reversed. Plaintiffs' evidence, considered in the most favorable light, merely discloses that an elderly woman by her own written and signed instruments gave to her son, who had previously represented her in some business transactions, a joint interest in shares of a savings and loan association purchased with her funds, with the provision that the shares should belong to him absolutely upon her death. No evidence was offered to show that the son requested his mother to make such a gift, or to establish the existence of a confidential relation. The court derived the existence of such a relation from the mere fact of consanguinity. This is not the law. In *Lochinger v. Hanlon*, 348 Pa. 29, 35, 33 A. 2d 1, this Court said: ". . . as between parent and child, the existence of the

relation is a question of fact to be determined from the evidence". See also *Clark v. Clark*, 174 Pa. 309, 336, 34 A. 610. In *Null's Estate*, 302 Pa. 64, 69, 153 A. 137, where a gift by a woman 87 years of age to her daughter was sustained, we held that the evidence necessary to show a confidential relation between parent and child must be certain and that "care must be used not to confound acts springing from natural love and affection with confidential relations".

The mere fact that the decedent was old was not sufficient to show that she was incapable of understanding the nature of her acts or that she was subject to the influence of her son. Nor are these results proved by evidence that he assisted her in some business transactions. The uncontradicted testimony of her own physician is that the decedent was mentally alert and that she understood all of her business relations with her son.

The present case is clearly distinguishable from *Lochinger v. Hanlon*, supra. In that case, which involved an alleged gift inter vivos by an aged father to his daughter, the father *himself* testified to the influence of the daughter over his actions, to the fact that the gift was not voluntary, and that it had been obtained by her nagging and insistence. The record showed that he did not clearly understand the creation of the joint account with his daughter; that he was deaf and illiterate. In that case, the burden of proof was clearly shifted to the daughter to prove that the gift was in all respects a free act of the parent untainted by fraud or undue influence. See *Williams' Estate*, 299 Pa. 440, 149 A. 728: *McCown v. Fraser*, 327 Pa. 561, 192 A. 674. In the case now before us plaintiffs failed to prove the existence of a confidential relation, weakened intellect or undue influence. The burden of proof remained with them. As the withdrawal application and the application for the creation of the joint account were signed by the decedent, there is a presumption that the transaction was

her voluntary act. No evidence whatever was offered to rebut this presumption and it therefore prevails. The record merely shows a gift from a mother to her son and, as we stated in *Worrall's Appeal*, 110 Pa. 349, 364, 1 A. 380: "There is nothing in the relation of parent and child, or other near relation, to preclude one from accepting a benefit from the other in the shape of a gift, or of a contract upon more advantageous terms than would have been granted to a stranger, and the fact that such a gift has been conferred, or a contract made, will not warrant an *inference* that it has been procured by undue influence."

The defendants have not, however, made any claim to the balance of the sum of $2,975 remaining after the shares were purchased in the joint names of the mother and son. This balance of $75 is, upon the record, the decedent's property since it is admitted that the money was withdrawn from the mother's account for the purpose of purchasing 29 shares of stock in the savings and loan association, and for no other purpose. Defendant, Louis C. Kespelher, should, therefore, restore to plaintiffs this sum of $75 with interest from the date when the aforementioned shares were purchased, at which time it was evident that the additional sum would not be needed for that purpose.

The decree of the court below is reversed; the injunction is dissolved and appellant, Louis C. Kespelher, is directed to pay to plaintiffs the sum of $75 with interest from September 30, 1940, at the rate of 6 percent per annum; costs to be paid by appellees.