Monongahela Trust Company, Appellant, *v.*
Kazimer et al.

Argued April 24, 1947. Before RHODES, P. J., HIRT, RENO, ROSS and ARNOLD, JJ. (DITHRICH, J., absent).

*Francis Taptich,* with him *George V. Moore,* for appellant.

*Harry Diamond,* with him *Jason Richardson,* for appellees.

Opinion by Ross, J., September 30, 1947:

On September 5, 1941, John Kobulnicky, Sr., and his wife Anna became the owners as tenants by entireties of certain real estate in the Borough of Munhall, Allegheny County. The husband died on May 1, 1943, and on May 27, 1943, the widow conveyed the property to her daughter, Margaret Kazimer, one of the defendants. On June 26, 1943, Margaret Kazimer and her husband Paul sold the property and with part of the proceeds of the sale purchased a savings share account with the First Federal Savings & Loan Association of Homestead, which for that reason was made a nominal defendant in this action. On October 19, 1943, Anna Kobulnicky was judicially declared a weak-minded person and the Monongahela Trust Company was appointed guardian of her estate. A few weeks later the guardian filed its bill in equity for an accounting, inter alia, of the proceeds of the sale of the property by the Kazimers, averring ". . . that Paul C. Kazimer and Margaret Kazimer, his wife, by false and fraudulent representations, plan and design and without knowledge or consent of Anna Kobulnicky and taking advantage of her weakness of mind, obtained the signature of the said Anna B. Kobulnicky . . ." to the deed dated May 27, 1943. The chancellor, affirmed by the court en banc, refused to order the accounting, and this appeal was taken.

Anna Kobulnicky, 73 years of age, has resided in the United States for over 53 years, during 50 years of which she was married to John Kobulnicky, Sr. She has seven living children, the defendant, Margaret Kazimer, being her youngest daughter. Margaret made her home with her parents until her marriage to the other individual defendant, Paul C. Kazimer, in 1927. After the marriage they lived with the Kobulnickys practically all of their married life until September 1941. John Kobulnicky, Sr., died testate May 1, 1943. His wife was the sole beneficiary in the will, and Paul C. Kazimer was

appointed the executor. On the day after the funeral of John Kobulnicky, Sr., at a family conference, it was decided that Anna Kobulnicky should make her home with the Kazimers. This was agreeable to her and to them, and a few days later she moved from her home— the property involved in this case—to the Kazimer home on Sylvan Avenue, Homestead, where she continued to reside until September 25, 1943, when she was taken to the home of another daughter to remain there temporarily while her daughter Margaret was taken to a hospital. Upon petition of a number of her children Anna Kobulnicky was adjudicated weak-minded on October 19, 1944, and the appointment of a guardian was made, apparently with her consent.

A gift by a parent to a child is not an unnatural transaction, nor is it an unusual one, and no presumption arises against its validity. *Ries' Estate,* 322 Pa. 211, 185 A. 288; *Reynolds v. Maust,* 142 Pa. Superior Ct. 109, 15 A. 2d 853. In this case there was nothing unusual or unnatural about the conveyance of her former home by mother to her daughter, especially in view of the fact that the mother was making her home and intended to make her home permanently with the daughter. However, the appellant attacks the validity of the conveyance contending that a confidential relationship existed between the mother and the daughter and that at the time of the conyevance the mother was weak-minded.

A confidential relationship is not limited to any particular association of parties but exists wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest. *Drob v. Jaffe,* 351 Pa. 297, 41 A. 2d 407; *Hamberg v. Barsky,* 355 Pa. 462, 50 A. 2d 345; *Shook v. Bergstrasser,* 356 Pa. 167, 51 A. 2d 681. To establish a confidential relation it should appear that a confidence or trust was reposed in the child, occupying a position of supervision, authority

and general direction over the parent's business affairs. *Null's Estate,* 302 Pa. 64, 153 A. 137; *Finn v. Finn,* 322 Pa. 196, 185 A. 847. There is no evidence in this case of a confidential relationship between the mother and the daughter and the mere fact of consanguinity does not establish a confidential relationship. *Gerner v. Kespelher,* 351 Pa. 649, 41 A. 2d 860. Moreover, as between parent and child, the existence of the relation is a question of fact to be determined from the evidence (*Lochinger v. Hanlon,* 348 Pa. 29, 33 A. 2d 1; *Clark v. Clark,* 174 Pa. 309, 34 A. 610) and the chancellor, affirmed by the court en banc, found as a fact that no confidential relationship existed between the mother and the daughter.

Consequently, the only issue in this case is: Was Anna Kobulnicky weak-minded on May 27, 1943, when she executed the conveyance to her daughter, Margaret Kazimer? To support its allegation that she was weak-minded at the time of the conveyance, the appellant relied upon the testimony of two medical witnesses, neither of whom is a psychiatrist nor has any particular training in diagnosing or treating mental diseases. Dr. Zeedick examined her in July 1943 and testified that at the time of his examination the mother's "mental condition was very poor. She had a very poor memory", but also testified that "she is not weak-minded but she has a very poor memory". Dr. Losa, who examined the mother in June 1943, testified that at the time of his examination "she was definitely unable to know properly concerning her estate or of any of her properties", but also testified "I do not know whether or not she might have been perfectly clear mentally in May 1943".

The chancellor, affirmed by the court en banc, made, inter alia, the following findings of fact: 'Twelve: This deed was prepared at the request of the said Anna B. Kobulnicky, and was executed and acknowledged in the home of Paul C. Kazimer and where Mrs. Kobulnicky had been making her home since a few days after the

death of her husband. The deed was translated to her in the Slavish language and she understood it, and its consequences. . . . Eighteen: At and before the deed was executed and delivered, viz., May 27, 1943, Anna B. Kobulnicky was mentally alert and knew and appreciated the purport of the delivery of the deed to her daughter, Margaret . . ." The only question involved in this appeal is whether these findings of fact are supported by competent evidence. *Cooper's Estate,* 320 Pa. 418, 183 A. 45; *Markovitz v. Markovitz,* 336 Pa. 136, 8 A. 2d 42; *Heffernan v. Heffernan,* 344 Pa. 137, 23 A. 2d 424.

Various witnesses testified to Mrs. Kobulnicky's mental condition during the summer of 1943, including the time of the execution of the deed. The parish priest testified that she never did anything during all of the summer of 1943 to indicate that there was anything wrong with her mentally or physically; that she understood everything and answered intelligently; that he considered she was "OK to take care of her estate and everything" and "As I knew her, she was a perfectly normal person". Mrs. Chervnak, a neighbor, testified that the mother did everything around the house that a normal person does and understood everything she said, and other neighbors testified to the same effect. Mrs. Micenko, who had known the mother for many years and visited with her often, testified that the mother acted as any normal person, talked intelligently and had a clear mind. She also testified that she had talked with Mrs. Kobulnicky on the first Sunday in June and the latter said, "I just signed a deed a few days ago to this property on Ninth Avenue. I would like them to have that home". William Matzko, a grandson, testified that she behaved very normally, acted just like a normal person and that "she could understood me very well". The notary public testified that the deed was interpreted to her and that he took her acknowledgment to it. The interpreter testified that he had interpreted the deed to

her in Slovak and that she said she understood, and that he explained the deed to her. Similar testimony was given by the Kazimers and by other witnesses. Without discussing the testimony further, it is clear that the chancellor's findings of fact are supported by competent evidence.

Decree affirmed at the cost of appellant.