Andrikanics, Appellant, *v.* Andrekanics.

Argued March 28, 1952. Before DREW, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Armin H. Friedman,* with him *Robert E. Kline* and *Albert D. Brandon,* for appellants.

*H. I. Hoffman,* with him *Hoffman & Hester,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, June 24, 1952:

The appeal is from a decree in equity dismissing a bill of complaint to set aside a deed executed by a father to his five children, who were the issue of his first marriage. Approximately two weeks after the execution and delivery of the deed the father remarried. The action against the children is by the father and his second wife.

The testimony is conflicting. The issue is one solely of fact. Plaintiffs allege that the deed was obtained through fraud and deceit of two of the sons. Defendants maintain that the grant was a voluntary one by the father, who was fully aware of the nature and effect of the conveyance.

Judge Soffel, the able and experienced chancellor, heard the case and filed findings of fact and conclusions of law. Succinctly stated, she found that the father, who was sixty-three years of age, illiterate but with full knowledge and understanding, informed the children living with him that he was about to remarry but that he and his wife proposed to live at her home and that he would deed his home to them; that in pursuance to such statement, the father with two of his sons went to the office of his attorney, taking with him his deed, and directed his lawyer to prepare a deed for the property to his five children; the lawyer secured the necessary title information from the father but inquired concerning the advisability of *deeding* the property to the children, since the lawyer had prepared a *will* for the father shortly before, making the same disposition; the father explained to the lawyer that "he talked the matter over with his intended wife and that she was not interested in his property, as she had her own home, and he was going to live with her at her home". The deed was duly prepared, was read and explained to the father, and he then executed and acknowledged it before an alderman. The instrument was thereafter delivered and recorded.

The chancellor, since she found the facts in defendants' favor, manifestly believed defendants and their witnesses, but did not believe the testimony of plaintiffs, viz.: that the two sons caused their father to become intoxicated and fraudulently induced him to execute the deed. An appellate court will never substitute its own findings of fact, where the hearing judge's findings are sufficiently supported by the evidence and approved by the court in banc. Such findings have the same weight as the verdict of a jury: *Eichman v. Hersker,* 170 Pa. 402, 33 A. 229; *Armstrong County v. Rearic,* 315 Pa. 133, 172 A. 130; *Meitner v. Scarborough,* 321 Pa. 212, 184 A. 81; *Pennsylvania Company v. Wallace,* 346 Pa. 532, 31 A. 2d 71.

We recognize the rule that where, however, the controlling findings are the result of deductions or inferences from undisputed evidence, such findings are reviewable by an appellate court: *Blue Ridge Metal Manufacturing Company v. Proctor et al.,* 327 Pa. 424, 194 A. 559; *William Sellers & Co., Inc. v. Clarke-Harrison, Inc.,* 354 Pa. 109, 46 A. 2d 497; *Brooks v. Conston,* 356 Pa. 69, 51 A. 2d 684, and the many cases therein. As was said by Judge Keller (later President Judge) in *Altaffer v. Anderson Automobile Company,* 77 Pa. Superior Ct. 63, at p. 65: "The appellee relies upon the well settled rule that the findings of fact of a judge sitting as a chancellor will not be disturbed on appeal except for clear or manifest error.

"This rule, however, has long been qualified to the extent that when the judgment of the court below is based upon an inference or deduction from other facts, the conclusion, being the result of reasoning, is subject to revision and correction by an appellate court, if erroneous: [citing cases]."

We regard the present findings, however, those *purely of fact.* They are in no sense the result of deduction and inference. But in any event, it is only where such inferences and deductions are *erroneous* that we will set them aside. The learned chancellor found from relevant testimony that the transfer was voluntarily made by a man who was not intoxicated and not under undue influence, who had stated to his children that he desired to provide them with a home before moving to the house of his second wife.

In transfers from a parent to a child there is no *presumption* of confidential relation. To avoid such a gift there must be proof of confidential relation and the exertion of fraud or undue influence: *Gerner v. Kespelher,* 351 Pa. 649, 41 A. 2d 860; *Monongahela Trust Company v. Kazimer,* 161 Pa. Superior Ct. 380, 54 A. 2d 841, and cases therein cited. In the present case not a

scintilla of evidence, which was believed by the chancellor, was offered to prove fraud or undue influence.

A question might be raised as to whether, in any event, the *wife-plaintiff* has the status in this proceeding to demand relief inasmuch as she was not married to the husband-plaintiff at the time the conveyance in question was made. See *Smigell v. Brod,* 366 Pa. 612, 79 A. 2d 411. However, we express no opinion on that point.

The decree is affirmed at the cost of appellants.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

It is with keen regret that I must disagree with my former colleague in the Court of Common Pleas of Allegheny County, the distinguished and able Judge Soffel, who found for the defendants in this case.

The record reveals that she devoted painstaking and most commendable care in her consideration of all the testimony and that she reached findings of fact warranted by the evidence. However, charged as we individually are with responsibility of review I am impelled to legal conclusions different from those arrived at by the Chancellor and affirmed by the majority of this Court.

In *Blue Ridge Metal M. Co. v. N. Pa. P. Co.,* 327 Pa. 424, 194 A. 559, this Court said: "While the findings of fact of a chancellor, supported by competent evidence, and affirmed by the court in banc, are conclusive upon appeal: Belmont v. Heist, 300 Pa. 542; Clark's Est., 303 Pa. 538; Brinton v. Davidson, 308 Pa. 371, such rule does not apply in favor of the deductions or inferences which are made by the chancellor from the facts which he has found. The conclusions of the chancellor being no more than his reasoning from the facts, are always reviewable upon appeal."

It is not to be questioned that the owner of property has the inalienable right to do with it what he chooses, and once he voluntarily disposes of it, he may not capriciously recall his act, for such uncontrolled vacillation would lead to chaos and disorder, making nothing secure and everything insecure. But this rule is based on the assumption that the act is a voluntary one. Man, presumed to be a reasoning animal, will not, lacking a cause, perform an act gratuitously prejudicial and harmful to himself.

The husband plaintiff in this case, Majk Andrikanics, is an immigrant mill worker without financial resources of any kind. Employed at the National Tube Company in McKeesport for 24 years, he was able from his earnings to purchase and pay for the modest house in which he lived with all his children, except the son George. One of his sons, Steve, paid him $16.00 per month rental for two rooms in the house.

Since the plaintiff has now repudiated the deed which he signed, the natural question arises as to why he made it in the first place. He explained at the trial that his sons Steve and Albert pressed alcoholic drinks upon him and had him believe that he was signing a will instead of a deed. In his broken English he testified as follows: "Saturday night give me drink whiskey, talking, give me whiskey in home, started talking. I says I going to see my wife. They say, 'Oh, no, you no going no place, you going downtown'. I say, 'What for?' They say, 'See our lawyer, McGinness'. I say, 'What for?' They say, 'Going to make, fix up the will'. I says 'I have a will, what are you going to fix?' They say, 'We going to fix up this today, you die before wife, after your wife no can bother us'."

He testified further that his sons told him: "Come on, fix a will because you die before you wife, your wife no can bother us."

The version of the son Steve, as to what occurred, was exactly to the contrary. He testified: ". . . . Right after supper father say, 'I am getting married'. It was a shock to all of us, especially me. I says, 'Who are you going to marry?' He says, 'Mary Motrinec'. Albert come up with a question, says, 'Well, I suppose we will have a new boss, I suppose we will have to move'. Father says, 'No, you don't have to worry about moving, I will sign the property over to all the children'. In the meantime he told Albert to call up McGinness. When he did, I don't know, whether it was Thursday or Friday, one of the two days."

Edward J. McGinness, a highly reputable lawyer at the Allegheny County bar, testified that Majk Andrikanics in a thoroughly sober condition came to his office the night of December 7, 1946, accompanied by his two sons, Steve and Albert, that there was no coercion or deception in his presence, and that Andrikanics, after the transaction had been explained to him, voluntarily signed the deed. That same evening the deed was taken to an alderman and there acknowledged by Andrikanics.

In the consideration of all the facts and inferences from those facts, the question constantly recurs: Why did Andrikanics dispossess himself of his only wealth? He had already willed the property to his children so that it cannot be said that he deeded it because he knew he couldn't take it with him when he died. And then another question obtrudes: Why did Steve place in his father's hand $1.00 for consideration? Attorney McGinness did not advise this payment. If, as the defendants would seek to have the world believe, the father forced the property on them the night of December 7, 1946, why were they so well prepared to take care of all the mechanics involved in the anticipated transaction? Steve paid $1.00 consideration and also paid for the acknowledgment, and Albert paid the lawyer.

George Andrikanics, who became one of the grantees under the deed, testifying against his own interest, declared that Steve had told him that he (Steve) "just had Dad drunk and pulled a fast one on him." Steve denied he said this and the Chancellor found George's testimony not worthy of credence and that it was overcome by the weight of the credible evidence.

Although Steve testified that his father said he would not need his property because he was going to live with his new wife, the fact remains that both the wife and the husband plaintiff needed the property and attempted to collect rent from Steve for the rooms he occupied. And when they made this effort, they were ordered out of the house by Steve.

The Chancellor found as a fact that there was no confidential relationship between the plaintiff and the defendants. This is in reality a conclusion of law and, as such, I believe, not borne out by the evidence. "Confidential relation is any relation existing between parties to a transaction wherein one of the parties is bound to act with the utmost good faith for the benefit of the other party and can take no advantage to himself from his acts relating to the interest of the other party." *Brooks, et al., Aplnts. v. Conston,* 356 Pa. 69, 76, 51 A. 2d 684.

Mr. Justice STERN in *Drob v. Jaffe,* 351 Pa. 297, 41 A. 2d 407, said: ". . . a confidential relationship is not limited to any particular association of parties but exists wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest."

I am satisfied that the record demonstrates a confidential relation here between the father and his children. The fact that the father was up in years, without education, unaware of legal forms, unable to read

English, all imposed upon the defendants here the duty to explain thoroughly to him what was intended and what would be the effects upon his rights if he signed the deed.

The burden of proof in this case was on the defendants to show that they did not exert undue influence on their father in getting him to sign the deed in question.

Toward the end of the trial, defendants' counsel offered to produce the testimony of the children who had not already testified and the learned Chancellor indicated that it would not be necessary to hear them. This ruling of the Chancellor was probably based upon her conclusion that the children had no burden of proof to meet on the issue of confidential relation. It is my belief that the children did have the burden of proof and that the Chancellor should have heard the testimony of the other children.