Holden, Appellant, *v.* Moser.

Argued October 1, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER and WRIGHT, JJ.

*Samuel L. Sagendorph,* for appellants.

*Raymond Pearlstine,* with him *Cassin W. Graig* and *Wisler, Pearlstine, Talone & Gerber,* for appellees.

OPINION BY RHODES, P. J., March 16, 1954:

Plaintiffs have appealed from the final decree of the Court of Common Pleas of Montgomery County dismissing their complaint in equity against defendants. Plaintiffs sought an injunction perpetually enjoining and restraining defendants from denying plaintiffs the use of easements for the drainage of surface water from plaintiffs' property.

The chancellor found that plaintiffs did not possess easements as alleged, and dismissed the complaint. The decree of dismissal was made final. Plaintiffs have appealed to this Court.

The basis for appellants' action is the language of a deed in the chain of title to a part of defendants' land.

In 1905, John Sweatt had acquired a relatively large tract of land on the east side of Ridge Pike in Lower Providence Township, Montgomery County. Sweatt was the common owner of the lands of plaintiffs and

defendants. He had his dwelling house and outbuildings on the southern portion of his property. In 1926, he began the construction of a road which intersected Ridge Pike and ran in a westerly direction; Ridge Pike runs north and south. The new road was referred to as Midelon Avenue originally, but subsequently it was designated Midland Avenue. This road was graded and surfaced with an 8-inch layer of stone; and it divided Sweatt's land into two parts, the northern and southern portions. In October of 1928 Sweatt conveyed to one Anthony Tommarelli a lot located at the northwest corner of his property and north of Midland Avenue. The southern boundary of the lot was parallel to Midland Avenue and located approximately midway between that road and the northern boundary of the entire tract. The deed contained the following clauses:

"Under and Subject as to a strip of land 5' wide extending along the N. W. side of land above described from the Ridge Road Northeastwardly to the middle line of the alley, 14' wide, referred to in the above description to a right of way to be used by the property above described and by the owners and occupiers of other lots, streets and alleys on the other land of the said John Sweatt, as and for an alley for the drainage of surface waters and for cellar drainage.

"The said strip of land 5' wide shall be maintained by the owners of the land above described and shall be kept in good order and condition for the flow of said waters.

"The grade of said alley shall be so established as to conduct said waters into the gutter along the East side of the Ridge Road and if the elevation of the gutter along said Ridge Road shall be so changed as to impede the flow of the water along the said alley, then the grade of said alley shall be changed by the owner of the land above described so as to conduct said waters

over said alley and into the gutter along the said Ridge Road.

"Under and Subject as to the NE 7 ft. in depth of the above described land to its use in conjunction with the seven foot in width of the adjoining property now of the said John Sweatt to its use as an alley or passageway from the line of Midelon Ave. N. 46 deg. 45' E. to the N.W. side of the above described 5' right of way or alley. This right of way or alley shall be for the use of properties abutting thereon and by the other land now of the said John Sweatt as and for an alley or passageway for the drainage of surface waters and for cellar drainage.

"The said alley or passageway 14 feet wide shall be maintained by the owners of lands abutting thereon at the joint and equal expense of all the properties fronting or abutting thereon in proportion to their respective frontage on said alley or passageway.

"The parties of the first part hereby reserve the right for themselves, their heirs and assigns and any person or corporation to whom they have granted or may hereafter grant such privileges, to erect, construct and maintain electric light, telephone and telegraph poles, wires, fixtures and conduits in front of said premises hereby granted along the turnpike and along the sides of the other streets and alleys on said plan of lots, and the right to lay in all streets or alleys or rights of way touching said land or shown on said plan, gas pipes, steam pipes, sewer pipes and conduits for electric and telephone wires and other appliances usual and necessary for the convenience of purchasers of land on said plan without liability to pay damages or compensation for such use."

Subsequently, the Tommarelli lot was conveyed to Sweatt and his wife by the Sheriff of Montgomery County after foreclosure proceedings. In 1941 Sweatt

died. In 1944 the plaintiffs purchased from Sweatt's fiduciaries certain land situate south of Midland Avenue. In 1946 the defendants purchased the Tommarelli lot from Sweatt's widow, under and subject by reference to the restrictions to which we have referred, and later in the same year they purchased from the fiduciaries of Sweatt other land bounded by Midland Avenue on the south and the Tommarelli lot on the north.

In 1950 defendants' son-in-law began construction of a house on that portion of defendants' land which had been purchased from Sweatt's estate; the construction was across the so-called 14-foot alley as set forth in Tommarelli's deed. In the course of the construction an underground pipe was discovered. The pipe was broken open and sewage flowed from it upon the land of defendants. It was ascertained that this pipe had been placed by Sweatt as a drain from a cesspool which was located on the land of the present plaintiffs, and that it lead to a cesspool Sweatt had constructed on the northeast corner of what is now the defendants' land. The pipe intersected the 14-foot alley or passageway near the new construction. Neither plaintiffs nor defendants were aware of its existence or of the existence of the cesspool into which it drained at the time they acquired their respective properties. Defendants caused the pipe to be blocked where it entered their land north of Midland Avenue. Since the blocking of the pipe plaintiffs complain that surface waters have backed up on the northeast corner of their land abutting the south side of Midland Avenue, and that their disposal system has not functioned properly.

The plaintiffs contend that they should be permitted to make use of the 14-foot alley or passageway as a means of draining the surface waters from their land, and thereby render their system adequate for their needs. Although plaintiffs do not contend that they

have any easement or right to the use of the underground pipe for any purpose, the chancellor found that plaintiffs do not have an implied easement to drain their cesspool into the cesspool on defendants' land through the pipe that formerly connected both. See *De Pietro v. Triano,* 167 Pa. Superior Ct. 29, 74 A. 2d 710; *Vanderwerff v. Consumers Gas Co.,* 166 Pa. Superior Ct. 358, 362, 71 A. 2d 809.

Plaintiffs' argument is to the effect that at the time of the conveyance to Tommarelli, in 1928, the land now of the plaintiffs was owned by Sweatt, and therefore it was intended to be benefited by the easements created in the deed as "other land now of the said John Sweatt."

The chancellor properly recognized that it was necessary to determine what land was meant by the words "other land now of the said John Sweatt." It is evident that the Tommarelli deed could not be construed in such manner as to give to any land then owned by Sweatt wheresoever situate the benefit of this servitude. In *Dyba v. Borowitz,* 136 Pa. Superior Ct. 532, 535, 7 A. 2d 500, 501, we said: "The oft repeated rule is that the words in a grant are to be construed in their ordinary and natural sense, and that they are to be given a reasonable construction in accord with the intention of the parties. To ascertain the intention we must look to the circumstances attending the grant: Connery v. Brooke, 73 Pa. 80, 83; Library Co. v. Fidelity Trust Co., 235 Pa. 5, 11, 83 A. 592."

The chancellor noted that the Tommarelli deed referred to a "plan of lots." The plan was not offered in evidence, and there was nothing to indicate that it is in existence. However, plaintiffs offered a plan prepared in 1952, and defendants offered a plan prepared in 1941. The latter plan indicated that Sweatt owned land north of Midland Avenue other than that

conveyed to defendants. The construction of Midland Avenue by Sweatt had been substantially completed at the time Sweatt sold to Tommarelli. The chancellor's 12th finding of fact, as amended, was as follows:

"Midland Avenue since the time it was originally built constituted a barrier for the natural flow of water from what is now the plaintiffs' land over the land of the defendant. In consequence thereof, water collects and lays on the northeast portion of plaintiffs' property. Before Edgar Holden built his driveway out to Midland Avenue, water lay on the northeast portion of his property."

Sweatt had made no provision by way of a pipe or other means to carry surface waters from the land south of Midland Avenue either over or under the road; and there was no evidence that the 14-foot alley was ever used as a water course.

The chancellor concluded that the covenants creating the easements did not apply to plaintiffs' property, and that plaintiffs did not have the benefit of these easements.

The chancellor's findings are supported by the evidence which is largely undisputed, and they were approved by the court in banc; they are therefore entitled to the same weight as a verdict of a jury. *Andrikanics v. Andrekanics,* 371 Pa. 222, 224, 89 A. 2d 792. Where the controlling facts are the result of deductions or inferences from undisputed evidence, they are reviewable by the appellate court. *Altaffer v. Anderson Automobile Co.,* 77 Pa. Superior Ct. 63, 65; *Blue Ridge Metal Manufacturing Co. v. Proctor,* 327 Pa. 424, 194 A. 559. As said by the Supreme Court in *Andrikanics v. Andrekanics,* supra, 371 Pa. 222, 225, 89 A. 2d 792, 793: "But in any event, it is only where such inferences and deductions are *erroneous* that we will set them aside."

The conclusion of the chancellor that plaintiffs' land was not intended to have the benefit of the servitude purported to have been created by the Tommarelli deed is a logical deduction or inference from the fact that the common owner had by his own acts effectively prevented such use. The acts of the creator of the easements were inconsistent with any intention to benefit the land south of Midland Avenue. Thus the easements were not appurtenant to plaintiffs' land. See Restatement, Property, §453, vol. 5, chap. 37, p. 2914; *Lindenmuth v. Safe Harbor Water Power Corporation*, 309 Pa. 58, 65, 163 A. 159. It is also significant that the 14-foot alley was to be maintained by the abutting land owners, and that plaintiffs were not abutting owners.

No right to the use of the alley had ever been exercised to benefit the land now of the plaintiffs, and no such use could have been made while Midland Avenue remained as a barrier. The plan offered by defendants indicated that Sweatt owned land north of Midland Avenue other than that of the present defendants, and the owners of that land may have some interest in the easements. However, that question was not before the court below and it is not present here.

Plaintiffs are not without a solution of the problem. A twelve-inch corrugated steel pipe had been placed at the intersection of Midland Avenue and Ridge Pike at plaintiffs' request. It was testified by a Supervisor of Lower Providence Township that a tile drain across plaintiffs' land would effectively drain the surface waters into that pipe.

The findings of fact are supported by the evidence, and in the conclusions of law of the court below there is no error.

The decree is affirmed at the cost of appellants.